UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| In Re. 2025 Subpoena to Children's National Hospital | Case No.: _____ |

### DECLARATION OF PARENT B.B.

1. I am the parent of Child B.B., a minor who received medical care at a the Washington D.C. and Maryland locations of Children's National Hospital ("CNH") between 2022 and 2025. That care included general pediatric and adolescent care, autism treatment, as well as transgender health care.
2. When we decided to seek care at CNH, I understood that my child's medical information would be confidential and used only by health-care providers involved in my child's treatment. I did not understand that my child's medical records could later be requested by federal government officials who are not part of their medical team.
3. During the course of my child's care at CNH, my child and I, along with others in my family, visited with CNH doctors, nurses, mental health professionals, and other providers in person, by telephone and through electronic communication.
4. During those visits and communications, my child and I disclosed private sensitive information with CNH providers, including details about my child's mental health, emotional state, physical health and development, school experiences, friendships and family relationship, and more. These communications were provided to help the medical providers understand my child as a whole person so they could recommend and adjust treatment.
5. During the course of my child's care at CNH, my child met separately with a mental health provider for an in-depth assessment and follow-up sessions. My child spoke with that provider about matters that were extremely personal and that my child has not shared with people outside our immediate family and the medical team.
6. My child and I also met with CNH physicians to discuss different treatment options, to ask questions about possible side effects and long-term impacts, and to talk through our

concerns. These were private conversations in which we relied on the providers' expertise and on the confidentiality of the setting.

7. As part of my child's treatment, between 2022 and 2025, CNH prescribed my child puberty blocking medication and hormone replacement therapy. Those medications required regular monitoring, including follow-up visits, lab tests, and physical examinations.

8. At follow-up appointments, my child's providers asked for updates about how my child was feeling—physically, mentally, and emotionally. They asked about school, friendships, and family life, and about how my child was handling day-to-day stresses. These discussions were documented in detailed notes in my child's medical record.

9. Neither my child nor I have provided my child's diagnoses and treatments to the federal government. We have not been informed by the federal government that my child's medical treatment is the subject of a federal inquiry.

10. Throughout my child's care, I understood that medical records might be used within the health-care system—for example, by other clinicians at CNH or our local doctors—to coordinate care and handle routine matters like billing. I did not expect, and did not agree, that my child's medical records could be turned over to federal government investigators or prosecutors who have no role in my child's treatment.

11. We chose CNH because of its reputation for high-quality pediatric and adolescent medicine, its coordinated programs for multiple conditions, and because we believed the providers would handle sensitive and complex issues with care and respect. I relied on the understanding that my child's medical information would stay within the health-care system and remain private.

12. The possibility that my child's entire medical record could be disclosed to the government is extremely upsetting to me. Those records contain intimate information about my child's body, emotions, family situation, and private thoughts. I do not want people in government offices, who have never met my child, reading and interpreting those details.

13. My child is transgender and already feels exposed and at risk in many public settings. Disclosure of my child's medical records to the government would mean my child's most personal information is being taken out of the safe space of the doctor's office and placed in the hands of strangers. It would cause my child severe emotional

distress.

14. Revealing my child's medical records would also expose myself and my child to the risk of mistreatment, harassment, discrimination, and even improper prosecution. My child has already been repeatedly bullied and physically assaulted in school and online related to their transgender status, which has increased their stress and anxiety.

15. My child has told me that the possibility of government officials reviewing their medical chart makes them less willing to speak frankly with doctors and therapists. My child worries about who might eventually see those notes. If my child does not feel able to be fully honest with providers, it will undermine the quality of care my child receives and may lead them to delay or avoid seeking care in the future.

16. As a parent, I view the confidentiality of medical records as a basic part of the relationship between families and health-care providers. Like any parent, if I know that our private conversations with doctors might be taken out of that context and provided to the government, I will become more cautious about what we share and where we seek treatment.

17. Once my child's records leave the health-care system and enter government files, I have no way to control how they are used, who will be able to read them, or how long they will be kept. I am deeply concerned that this loss of control will have long-term consequences for my child's privacy and sense of safety.

18. I am aware of the government's current public antipathy toward transgender people, and it adds to my fear regarding the release of the identity of myself and my child.

19. Our privacy would not be protected by redacting our names from any medical documentation that is provided to the government. My child's records contain many details—such as age, timing and type of treatment, family structure, school circumstances, and other specific facts—that, taken together, could easily point to my child and our family even without names attached.

20. We shared very personal information with CNH because we understood it was necessary for my child's care and because we believed it would remain within the medical system. Having that same information turned over to the government would contradict the expectations under which we sought treatment and would seriously damage our trust in the health-care system.

21. With the exception of a small group of trusted members of my community, I have not disclosed, nor will I disclose, my involvement or my child's involvement in this litigation.
22. If our names were made public in this litigation, that would effectively identify my child as the patient whose records are at issue. Given the current climate and my child's experience as a transgender young person, I fear that public identification would expose my child and our family to bullying, harassment, and discrimination, and would cause my child significant emotional harm.
23. If we are not permitted to proceed under pseudonyms, we will likely feel compelled to withdraw from this case for the safety of our child and our family.
24. For all the reasons above, I strongly object to my child's medical records being shared with the government.
25. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Dated: 11/13/25
**Parent B.B.**