UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| In Re. 2025 Subpoena to Children's National Hospital | Case No.: _____ |

**DECLARATION OF PARENT C.C.**

1. I am the parent of Youth C.C., who was a minor at the time they received medical care at Children's National Hospital ("CNH") approximately between August/September 2019 – May 2020. That care included a range of medical care, as well as transgender healthcare.

2. My child was seen for care at both the Washington, DC and Maryland locations of CNH.

3. During the course of my child's care at CNH, my child and I, along with other members of our family, met with CNH physicians, nurses, mental health professionals, and other staff. We also communicated with CNH by telephone and through electronic messages.

4. I believe there are extensive medical records relating to my child's care held by CNH.

5. In those visits and communications, my child and I shared private information about my child's physical health, mental and emotional well-being, development and maturation, school life, relationships with peers and family members, and concerns about safety and stress. We understood that this information was being collected so that CNH providers could evaluate my child's health, make treatment recommendations, and monitor how my child was doing over time.

6. As part of my child's care at CNH, my child met with a licensed mental health provider for a detailed assessment and follow-up conversations. Those discussions included

sensitive topics that, to my knowledge, my child would not likely have shared beyond our immediate family and healthcare team.

7. My child and I also met with physicians to discuss possible treatment options, the risks and benefits of those options, and our questions and concerns. These were careful, in-depth conversations about my child's health and well-being.

8. At various points, we were given the opportunity to ask questions and raise concerns privately with CNH providers. We relied on those private conversations to decide how best to support our child.

9. Follow-up appointments included updates about my child's mental health, daily functioning, and school and family life. These visits likely generated detailed notes in my child's medical record.

10. Throughout my child's care, both my child and I understood that the information we shared with CNH was private medical information. We believed that it would be used by clinicians within the healthcare system to provide and coordinate care, and that it would not be disclosed to people outside that system, including government investigators or prosecutors who are not involved in my child's treatment.

11. We chose CNH at the recommendation of my child's pediatrician and because of its reputation for high-quality pediatric and adolescent care and because we trusted its providers to treat sensitive issues with discretion and professionalism. Our decision to seek care there was based in part on our understanding that my child's medical information would be kept confidential. I was given written assurances of confidentiality of my child's records at the beginning of my child's care and at other times during my child's treatment.

12. The possibility that my child's complete medical records could be turned over to the government is extremely troubling to me. Those records contain deeply personal information about my child's body, mental health, family circumstances, and private thoughts, including that my child is transgender. I do not want strangers in the government, who have never met my child, reading and analyzing those details. I also fear for my safety and my child's safety if the current administration has those records because of what I have seen this administration do to target and harm transgender people.

13. Disclosure of my child's medical records to the government would cause my child significant emotional distress. My child already feels vulnerable and is aware of potential risks to their safety because my child is transgender. Knowing that government investigators and lawyers might review the most personal aspects of their life would make my child feel exposed and targeted. It would also make me worry for my child's safety and well-being.

14. I am concerned that if my child's records are disclosed in this case, it will affect how my child approaches health care in the future. My child has conveyed to me that the idea of government officials reading their medical chart makes them less willing to speak openly with doctors and therapists. If they do not feel they can be honest, they may delay or avoid seeking care they need. That makes me concerned as a parent about my child's ability to get the health care they need going forward.

15. I am also concerned that disclosing my child's medical documents would disclose information relating to my child that is not available from any other sources and that has been important for ensuring that my child's historical information cannot be obtained.

16. For me as a parent, having my child's private medical information shared with the government would be a serious breach of trust in the medical system. As any parent would, I would be more hesitant about what we disclose in future visits and where we seek care. I am also a federal employee and worry that this information could lead to retaliation at my work.

17. The harm from disclosing my child's medical records would not be limited to the present moment. Once this information leaves the healthcare system and enters government files, my child will have no control over who reads it, how it is interpreted, or how long it is retained. I fear that could have long-lasting negative consequences for their privacy and well-being.

18. I do not believe that redacting our names from my child's chart would meaningfully protect our privacy. During the course of my child's care, we shared numerous details that, when combined—such as age, timing of visits, family structure, school circumstances, and other life events—could identify our family.

19. Turning over my child's full medical records to the government would contradict the expectations of confidentiality on which we relied when we sought care. We shared very sensitive information with CNH providers because we believed it would remain within their healthcare system and be used only to care for my child.

20. Public disclosure of my name, which would necessarily identify my child, or the disclosure of my child's name in the context of a legal challenge about their medical records, would cause my child serious emotional distress and would expose us to a real risk of bullying, harassment, and discrimination.

21. If we are not permitted to proceed under pseudonyms, we will likely have to withdraw from this litigation in order to protect our child's safety and privacy.

22. For all the reasons above, I strongly object to my child's medical records being shared with the government.

23. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*X.X*

_____        Dated: 11/14/2025

**Parent C.C.**