UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| In Re. 2025 Subpoena to Children's National Hospital | Case No.: _____ |

## DECLARATION OF PARENT G.G.

1. I am the parent of Child G.G., a minor who received medical care at Washington D.C./Maryland locations of Children's National Hospital ("CNH") between 2023 and 2025. That care included transgender health care.

2. We chose CNH because of its reputation for high-quality pediatric and adolescent medicine and because we believed the providers would handle sensitive issues with care and respect. I relied on the understanding that my child's medical information would stay within the health-care system and remain private.

3. When we decided to seek care at CNH, I understood that my child's medical information would be treated as confidential and used only by health-care professionals involved in my child's treatment. I did not understand that my child's medical records could later be requested by government officials who are not part of their medical team.

4. During the course of my child's care at CNH, my child and I, along with others in my family, visited with CNH medical professionals in person, by telephone and by electronic messages.

5. During those visits and communications, my child and I disclosed private sensitive information about my child's mental and physical health, emotional state, development, school experiences, relationships with peers and family members, and more. All of this

information was shared with medical providers so they could provide diagnoses, treatment recommendations, and treatment plans for my child.

6. My child met separately with a licensed mental health professional at CNH for an in-depth assessment and follow-up sessions. My child spoke with that provider about matters that were extremely personal and that my child has not shared with people outside our immediate family and the medical team.

7. My child and I also met with CNH physicians to discuss different treatment options, to ask questions, and to talk through concerns. These were private in-depth conversations in which we relied on the providers' expertise and on the confidentiality of the setting.

8. We had follow-up appointments with CNH providers, which included updates about my child's health and mental health. At these follow up visits, health care providers regularly asked for updates about how my child was feeling—physically, mentally, and emotionally. They asked about school, friendships, and family life, and about how my child was handling day-to-day stresses. These discussions were documented in detailed notes in my child's medical record.

9. Neither my child nor I have made my child's diagnoses and treatments known to the federal government. We have not been contacted by federal officials about my child's care and we have not been informed that any part of my child's treatment is the subject of a government investigation.

10. Both my child and I understood that our medical records might be used within the health-care system—for example, by other clinicians at CNH or our local doctors—to coordinate care and handle routine matters like billing. I did not expect, and did not

agree, that my child's medical record could be turned over to government investigators or prosecutors who have no role in my child's treatment.

11. Disclosure of my child's medical records to the government would be extremely upsetting to me and my child. Those records contain intimate information about my child's body, emotions, family situation, and private thoughts that should not be read and interpreted by government officials, who have never met my child and lack all context.

12. My child is transgender and already feels exposed and at risk in many public settings. Revelation of my child's records would take their most personal information out of the safe space of the doctor's office and place it in the hands of strangers, which would cause serious emotional distress for my child.

13. Taking my child's records out of the medical context and giving them to the government will also make me more cautious in what we share with doctors and where we seek treatment. Disclosure would mean I have no control over how my child's information is used, who can read it, and how long it will be kept.

14. Our privacy would not be protected by merely redacting our names from any medical documentation that is provided to the government. During the course of my child's care, we disclosed innumerable details to CNH medical providers, such as age, timing and type of treatment, family structure, school circumstances, and other specific facts, that could be used to identify me and my child.

15. We needed to disclose very personal information to CNH because it was necessary for my child's care and because we believed it would remain within the medical system. Turning that same information over to the government would be contrary to the

expectations and understanding under which we sought treatment and would seriously undermine our trust in the health care system.

16. Given the current climate and my child's experience as a transgender young person, I fear that public identification would expose my child and our family to bullying, harassment, and discrimination, and would cause my child significant emotional harm.

17. If we are not permitted to proceed under pseudonyms, we may have to withdraw this motion and abandon litigation for the safety of our child and our family.

18. For all the reasons above, I object to my child's medical records being shared with the government.

19. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_Parent G.G._ (signature)

**Parent G.G.**

Dated: 11/13/2025