**EXHIBIT G**



U.S. Department of Justice
Civil Division

---

Office of the Assistant Attorney General    Washington, DC 20044

June 11, 2025

## MEMORANDUM

**TO:** All Civil Division Employees

**FROM:** Brett A. Shumate
Assistant Attorney General

BRETT SHUMATE
Digitally signed by BRETT SHUMATE
Date: 2025.06.11 12:27:50 -04'00'

**SUBJECT:** <u>Civil Division Enforcement Priorities</u>

President Trump and Attorney General Bondi have directed the Civil Division to use its enforcement authorities to advance the Administration's policy objectives. This memorandum describes those policy objectives and directs Civil Division attorneys to prioritize investigations and enforcement actions advancing these priorities.

### 1. Combatting Discriminatory Practices and Policies

On January 21, 2025, President Trump issued Executive Order 14,173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, 90 Fed. Reg. 8633 (Jan. 21, 2025), which established "the policy of the United States to protect the civil rights of all Americans and to promote individual initiative, excellence, and hard work." *Id.* § 2. To this end, the President "order[ed] all agencies to enforce our longstanding civil-rights laws and to combat illegal private-sector DEI preferences, mandates, policies, programs, and activities." *Id.* As part of these efforts, Attorney General Bondi has directed that the Department align its "litigating positions with [the] requirement of equal dignity and respect." Memorandum from Attorney General, *Eliminating Internal Discriminatory Practices*, at 2 (Feb. 5, 2025).

Consistent with these directives, the Civil Division will use all available resources to pursue affirmative litigation combatting unlawful discriminatory practices in the private sector. In particular, the Civil Division is authorized to bring suit under the False Claims Act for treble damages and penalties against any person who knowingly submits or causes the submission of false claims to the government. 31 U.S.C. § 3729 *et seq.* This includes entities that receive federal funds but knowingly violate civil rights laws. In support of these efforts, the Deputy Attorney General recently announced the Civil Rights Fraud Initiative. The Civil Division is committed to advancing the Initiative and will aggressively investigate and, as appropriate, pursue False Claims Act violations against recipients of federal funds that knowingly violate civil rights laws. The Civil Division will work with the Civil Rights Division, relators, other whistleblowers, and federal agencies to advance these efforts.

### 2. Ending Antisemitism

On January 29, 2025, President Trump issued Executive Order 14,188, *Additional Measures to Combat Anti-Semitism*, 90 Fed. Reg. 8847 (Feb. 3, 2025), which established the "policy of the United States to combat anti-Semitism vigorously, using all available and appropriate legal tools, to prosecute, remove, or otherwise hold accountable the perpetrators of unlawful anti-Semitic harassment and violence," *id.* § 2, and encouraged the "Attorney General ... to employ appropriate civil-rights enforcement authorities ... to combat anti-Semitism," *id.* § 3(c). The Executive Order also reaffirmed Executive Order 13,899, *Combating Anti-Semitism*, 84 Fed. Reg. 68779 (Dec. 16, 2019).

The Attorney General has established Joint Task Force October 7 ("JTF 10-7") and directed components to "prioritize seeking justice for victims of the October 7, 2023 terrorist attack in Israel" as well as "combatting antisemitic acts of terrorism and civil rights violations in the homeland." Memorandum from Attorney General, *Establishment of Joint Task Force October 7*, at 1 (Feb. 5, 2025). To assist these enforcement efforts, the Civil Division will prioritize investigations and enforcement actions against entities that make claims for federal funds but knowingly violate federal civil rights laws by participating in or allowing antisemitism.

### 3. Protecting Women and Children

The President has issued several Executive Orders protecting women and children. On January 20, the President issued Executive Order 14,168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615 (Jan. 30, 2025), which established the "policy of the United States to recognize two sexes, male and female." *Id.* §.2. On February 3, President Trump issued Executive Order 14,187, *Protecting Children from Chemical and Surgical Mutilation*, 90 Fed. Reg. 8771 (Feb. 3, 2025), which directed the Attorney General to, among other things, "prioritize investigations and take appropriate action to end deception of consumers, fraud, and violations of the Food, Drug, and Cosmetic Act by any entity that may be misleading the public about long-term side effects of chemical and surgical mutilation." *Id.* § 8(c).

Following these directives, Attorney General Bondi directed the Civil Division to "act decisively to protect our children and hold accountable those who mutilate them under the guise of care" and "to undertake appropriate investigations of any violations of the Food, Drug, and Cosmetic Act by manufacturers and distributors engaged in misbranding by making false claims about the on- or off-label use of puberty blockers, sex hormones, or any other drug used to facilitate a child's so-called 'gender transition.'" Memorandum from Attorney General, *Preventing the Mutilation of American Children*, at 3-4 (April 22, 2025). The Attorney General also directed the Civil Division "to pursue investigations under the False Claims Act of false claims submitted to federal health care programs for any non-covered services related to radical gender experimentation." *Id.* at 4.

The Civil Division will use all available resources to prioritize investigations of doctors, hospitals, pharmaceutical companies, and other appropriate entities consistent with these directives. These efforts will include, but will not be limited to, possible violations of the Food,

Drug, and Cosmetic Act and other laws by (1) pharmaceutical companies that manufacture drugs used in connection with so-called gender transition and (2) dealers such as online pharmacies suspected of illegally selling such drugs. 31 U.S.C. § 301 *et seq*. In addition, the Civil Division will aggressively pursue claims under the False Claims Act against health care providers that bill the federal government for impermissible services. This includes, for example, providers that attempt to evade state bans on gender dysphoria treatments by knowingly submitting claims to Medicaid with false diagnosis codes.

### 4. Ending Sanctuary Jurisdictions

On President Trump's first day in office, he issued multiple directives to secure the southern border. *See* Proclamation 10,886, *Declaring a National Emergency at the Southern Border of the United States*, 90 Fed. Reg. 8327 (Jan. 20, 2025); Executive Order 14,159, *Protecting the American People Against Invasion*, 90 Fed. Reg. 8443 (Jan. 20, 2025). To ensure that States and local governments promote the enforcement of our nation's immigration laws, he also issued Executive Order 14,287, *Protecting American Communities from Criminal Aliens*, 90 Fed. Reg. 18761 (April 28, 2025). This built on the President's previous Executive Order 13,768, *Enhancing Public Safety in the Interior of the United States*, 82 Fed. Reg. 8799 (January 25, 2017). Moreover, Attorney General Bondi has directed the Civil Division to "identify state and local laws, policies, and practices that facilitate violations of federal immigration laws or impede lawful federal immigration operations" and "take legal action to challenge such laws, policies, or practices," where appropriate. Memorandum from Attorney General, *Sanctuary Jurisdiction Directive*, at 3 (Feb. 5, 2025). Consistent with this directive, the Civil Division shall prioritize affirmative litigation to invalidate any State or local laws preempted by Federal law.

### 5. Prioritizing Denaturalization

The Department of Justice may institute civil proceedings to revoke a person's United States citizenship if an individual either "illegally procured" naturalization or procured naturalization by "concealment of a material fact or by willful misrepresentation." 8 U.S.C. § 1451(a). The benefits of civil denaturalization include the government's ability to revoke the citizenship of individuals who engaged in the commission of war crimes, extrajudicial killings, or other serious human rights abuses; to remove naturalized criminals, gang members, or, indeed, any individuals convicted of crimes who pose an ongoing threat to the United States; and to prevent convicted terrorists from returning to U.S. soil or traveling internationally on a U.S. passport. At a fundamental level, it also supports the overall integrity of the naturalization program by ensuring that those who unlawfully procured citizenship, including those who obtained it through fraud or concealment of material information, do not maintain the benefits of the unlawful procurement.

3

The Civil Division shall prioritize and maximally pursue denaturalization proceedings in all cases permitted by law and supported by the evidence. To promote the pursuit of all viable denaturalization cases available under 8 U.S.C. § 1451 and maintain the integrity of the naturalization system while simultaneously ensuring an appropriate allocation of resources, the Civil Division has established the following categories of priorities for denaturalization cases:

1. Cases against individuals who pose a potential danger to national security, including those with a nexus to terrorism, espionage, or the unlawful export from the United States of sensitive goods, technology, or information raising national security concerns;

2. Cases against individuals who engaged in torture, war crimes, or other human rights violations;

3. Cases against individuals who further or furthered the unlawful enterprise of criminal gangs, transnational criminal organizations, and drug cartels;

4. Cases against individuals who committed felonies that were not disclosed during the naturalization process;

5. Cases against individuals who committed human trafficking, sex offenses, or violent crimes;

6. Cases against individuals who engaged in various forms of financial fraud against the United States (including Paycheck Protection Program ("PPP") loan fraud and Medicaid/Medicare fraud);

7. Cases against individuals who engaged in fraud against private individuals, funds, or corporations;

8. Cases against individuals who acquired naturalization through government corruption, fraud, or material misrepresentations, not otherwise addressed by another priority category;

9. Cases referred by a United States Attorney's Office or in connection with pending criminal charges, if those charges do not fit within one of the other priorities; and

10. Any other cases referred to the Civil Division that the Division determines to be sufficiently important to pursue.

These categories are intended to guide the Civil Division in prioritizing which cases to pursue; however, these categories do not limit the Civil Division from pursuing any particular case, nor are they listed in a particular order of importance. Further, the Civil Division retains the discretion to pursue cases outside of these categories as it determines appropriate. The assignment of denaturalization cases may be made across sections or units based on experience, subject-matter expertise, and the overall needs of the Civil Division.

4