**EXHIBIT P**

# UNITED STATES OF AMERICA
## DEPARTMENT OF JUSTICE

## SUBPOENA DUCES TECUM

No. 25-1431-014

**To:** The Children's Hospital of Philadelphia
3401 Civic Center Boulevard
Philadelphia, Pennsylvania 19104

*YOU ARE HEREBY COMMANDED TO APPEAR BEFORE Patrick Runkle, Ross Goldstein, and/or Francisco Unger, officials of the United States Department of Justice, and you are hereby required to bring with you and produce the following:*

Please see Attachment A

*which are necessary in the performance of the responsibility of the United States Department of Justice to investigate Federal health care offenses as defined in 18 U.S.C. § 24(a).*

*Please contact Assistant Director Patrick Runkle, Assistant Director Ross Goldstein, or Trial Attorney Francisco Unger at 202-616-0295 if you have any questions regarding this Subpoena Duces Tecum.*

**PLACE AND TIME FOR APPEARANCE:**
U.S. Department of Justice, Consumer Protection Branch, 450 Fifth St., NW, Washington, D.C.
on Wednesday, the 9th day of July, 2025, at ten o'clock a.m.

Failure to comply with the requirements of this subpoena will render you liable to
proceedings in the district court of the United States to enforce obedience to the
requirements of this subpoena, and to punish default or disobedience.

Issued under authority of Section 248 of the Health Insurance Portability & Accountability Act of 1996,
Public Law No. 104-91 (18 U.S.C. § 3486)



*IN TESTIMONY WHEREOF*

Brett A. Shumate, Assistant Attorney General, the
undersigned official of the United States Department of
Justice, has set his hand this 11th day June, 2025.

**BRETT
SHUMATE**

Digitally signed by BRETT
SHUMATE
Date: 2025.06.11 12:05:50
-04'00'

*(signature)*

**ATTACHMENT A TO SUBPOENA TO:**

THE CHILDREN'S HOSPITAL OF PHILADELPHIA
3401 CIVIC CENTER BOULEVARD
PHILADELPHIA, PENNSYLVANIA 19146-2305

## I.  DEFINITIONS

1.    "You," "Your Company," "the Company," and "CHOP" means:

a.    The Children's Hospital of Philadelphia, a Pennsylvania nonprofit corporation, whose principal place of business is located at 3401 Civic Center Boulevard, Philadelphia, Pennsylvania, without regard to any name under which it has done business;

b.    All of its predecessors, subsidiaries, affiliates, branches, divisions, groups, business units, business segments, operations, units, parent organizations, successors, assigns, plants, and any joint ventures of which they were or are a part, including, without limitation, CHOP's Gender and Sexuality Development Program; and

c.    Each of its present or former officers, directors, employees, attorneys, representatives, and agents acting or purporting to act or appearing to act on behalf of the Company, whether or not acting within the proper scope of his or her actual authority.

2.    "Employee" means any person including, but not limited to, any independent contractor or agent, all past and present directors, officers, agents, representatives, attorneys, accountants, advisors, and consultants who acted or purported to act on behalf of the Company or who have performed any service for the Company or under its name, whether on a full-time, part-time, piece-work, commission, volunteer, or other basis, and whether paid or unpaid.

3.    "Document" should be afforded the broadest possible meaning and includes every writing or record of whatever type or description, including but not limited to any electronically stored data or paper document, in the possession, custody, or control of the Company. This includes, but is not limited to:

a.    All material that is handwritten, typed, printed, recorded, transcribed, taped, filmed, in graphic form, or in aural form;

1

b.   Drawings, designs, manuals, memoranda, emails, reports, financial reports, notes, diaries, notations of any sort of conversations, working papers, letters, envelopes, telegrams, messages, studies, analyses, books, articles, notebooks, booklets, circulars, bulletins, notices, instructions, pamphlets, pictures, films, videos, voice recordings, maps, work papers, arithmetical computations, calendars (including electronic calendars), date books, task lists, minutes, all communications of any type (e.g., e-mail, voice mail, text messaging, WhatsApp and similar applications), social media content (including posts, messages, comments, and metadata), audio and video files,

c.   Electronically stored data on magnetic or optical storage media as an "active" file or files (readily readable by one or more computer applications or forensics software), including metadata;

d.   Any electronic files saved as a backup, including metadata;

e.   Any deleted but recoverable electronic files, including metadata;

f.   Any electronic file fragments (files that have been deleted and partially overwritten with new data), including metadata;

g.   Every copy of every document where such copy is not identical to the original because of any addition, deletion, alteration, or notation; and

h.   All attachments, enclosures, or other matter affixed to, transmitted with, or incorporated by reference within documents responsive to this Subpoena including, but not limited to, any pages showing who reviewed, approved, or rejected a particular document.

4.   "Relevant Time Period" means January 1, 2020, through the present date. All responsive documents that were prepared, dated, sent, received, altered, in effect, or which came into existence during this period are to be produced pursuant to this Subpoena.

5.   "Or" as well as "and" shall be construed interchangeably in a manner that gives this Subpoena the broadest possible meaning.

6.   "Any" shall be construed to include the word "all" and the term "all" shall be construed to include the word "any."

7.   "Relate to" means to make a statement about, refer to, discuss, describe, reflect, identify, deal with, consist of, or in any way pertain, in whole or in part to the subject.

8. "Communication" means any transmission or exchange of information, statements, ideas, inquiries, or data between two or more persons orally, in writing, digitally, visually, or electronically regardless of the medium or platform used, including social media interactions, voicemails, and virtual meetings (e.g., Zoom, WebEx, Microsoft Teams). The term includes all drafts, versions, replies, responses, forwards, and attachments associated with or forming part of the communication, as well as any records or logs reflecting the time, date, participants, and content of such communications.

9. "Gender-related care" means any medical, surgical, psychological, or social treatment provided to individuals to alter their physical appearance or social presentation to resemble characteristics typically associated with the opposite biological sex.

10. "Puberty blockers" means any gonadotropin-releasing hormone ("GnRH") agonists or related drugs (e.g., leuprolide, triptorelin) used to delay the onset of puberty.

11. "Hormones" includes testosterone, estrogen, and any other hormonal drugs used in hormonal treatments sometimes known as "gender affirming hormone therapy" ("GAHT") or transgender hormone therapy used to induce cross-sex characteristics.

12. "Minor" means any patient under the age of 18 at the time of consultation, treatment, or prescription.

## II. GENERAL INSTRUCTIONS

1. You are required to produce the **originals** of each document and other item that is responsive, in whole or in part, to any request set forth in this Subpoena, together with all copies of any such document that exist.

   a. If a copy is identical to the original, you are not required to produce it, but if you choose not to, your records custodian (the "Custodian," as described below) must maintain a written log identifying the location(s) where each identical copy of the original document was located, including all locations, if more than one. This includes, in the case of information stored in electronic form, a description, including drives, directories, and computers of where the document is located.

   b. If a copy differs from the original by virtue of any addition, deletion, alteration, notation, or inscription on any part of the front or back of the document, the original and copy must each be produced.

3

2. **No document called for by this subpoena shall be destroyed, modified, redacted, removed, or otherwise made inaccessible.** Documents called for by this Subpoena for which a claim of privilege is made, in compliance with the instruction below, shall be retained and protected.

3. Your Company is to designate someone as the person responsible to produce documents on the Subpoena return date (the "Custodian").

    a. Such Custodian shall have personal, direct, and thorough knowledge of, and responsibility for, the search conducted by the Company for documents responsive to this Subpoena.

    b. The Custodian shall be prepared on the return date to submit to examination concerning the method and completeness of the Company's response, the exact location(s) within the Company's premises at which documents produced in response to the Subpoena were found, and other matters pertaining to the search.

    c. The Custodian shall further be prepared to provide a written log identifying the location(s) in which each produced document was located, indicating all locations, if more than one. This includes, in the case of information stored in electronic form, a description, including drives, directories, and computers, of where the document is located.

4. The Company shall identify the paragraph and subparagraph of Section III of this Attachment to the Subpoena ("Documents to Be Produced") to which each document produced pursuant to this Subpoena is responsive.

5. If the Company has knowledge of any document that would be responsive to this Subpoena, but has been lost, destroyed, or discarded, it shall identify the document to the extent possible, and provide an explanation of the loss, destruction or discarding, including identification of each person authorizing or having knowledge of the loss, destruction, or discarding.

6. The singular form of a word shall be construed to include within its meaning the plural form of the word, and *vice versa*, and the use of any tense of any verb shall be considered to include all other tenses in a manner that gives this Subpoena the broadest reading.

7. All electronically stored information must be collected using a forensically sound process. When the image file is produced, the Company must preserve the integrity of the electronic document's contents, including the original formatting of the document, its metadata and, where applicable, its revision history.

4

8.  If the Company withholds any document on the ground of any claimed privilege, it shall provide a statement with respect to each document setting forth

    a.  The name and title of the author (and if different, the preparer and signatory);

    b.  The name(s) and title(s) of the individual(s) to whom the document was addressed;

    c.  The name(s) and title(s) of the individuals to whom the document or a copy of the document was sent or to whom the document or a copy, or any part thereof, was shown;

    d.  The date of the document;

    e.  The number of pages;

    f.  A brief description of the subject matter;

    g.  A statement of the specific basis on which privilege is claimed; and

    h.  The paragraph or subparagraph in Section III of this Attachment ("Documents to Be Produced") to which it is responsive.

## III. DOCUMENTS TO BE PRODUCED

1.  Complete personnel files for each employee, contractor, or affiliate of the Company in the following categories:  (a) executives, management employees, or board members with authority to direct any aspect of the Company's affairs; (b) employees, contractors, or affiliates who have authority to prescribe medications or perform medical evaluations; and (c) employees, contractors, or affiliates who are engaged in billing activities.

2.  All documents, including billing records, insurance claims, internal protocols, or guidance, concerning the use of ICD (*i.e.*, International Classification of Diseases) diagnosis codes in connection with the treatment of minor patients receiving gender-related care.

3.  All documents that show or relate to any use of diagnosis codes for minors other than those specifically identifying transsexualism, gender dysphoria, gender incongruence, or gender identity disorder (*e.g.*, codes for endocrine disorder, unspecified hormonal disorders, medication management, etc.).

5

4.    All documents reflecting communications among Company employees (including physicians, billing staff, and administrators), or between the Company and any third party, relating to whether or how to code or bill for treatment of gender dysphoria by using alternative diagnoses or alternative ICD codes.

5.    All communications with public or private health care benefit programs or plans regarding the use of ICD codes for gender-related care, including any inquiries, denials, or appeals related to claims for such care.

6.    Any training materials, coding manuals, presentations, or communications relating to billing or coding practices for gender-related care, puberty blockers, or hormone therapy.

7.    All documents relating to communications between You and any pharmaceutical manufacturer of puberty blockers or hormones, or any compounding pharmacy providing puberty blockers or hormones, relating to the use of such drugs in gender-related care for minors.

8.    All documents relating to communications with pharmaceutical sales representatives, marketing departments, or medical science liaisons regarding the use of puberty blockers or hormones for gender-related care or the treatment of gender dysphoria, including with regard to the safety and efficacy of such drugs for those uses.

9.    All documents, including presentations and promotional materials, received from pharmaceutical manufacturers or compounding pharmacies concerning uses of their products in minors for gender-related care or for the treatment of gender dysphoria, including so-called "scientific exchange" materials.

10.   All documents relating to contracts, sponsorships, speaking engagements, consulting agreements, grants, or financial or promotional arrangements between You and any manufacturer or compounder of puberty blockers or hormones.

11.   Documents sufficient to identify each patient (by name, date of birth, social security number, address, and parent/guardian information) who was prescribed puberty blockers or hormone therapy.

12.   For each such patient identified in Subpoena specification 11, *supra*, documents relating to the clinical indications, diagnoses, or assessments that formed the basis for prescribing puberty blockers or hormone therapy.

13.   All documents relating to informed consent, patient intake, and parent or guardian authorization for minor patients identified in Subpoena specification 11, *supra*, including any disclosures about off-label use (*i.e.*, uses not

6

approved by the United States Food and Drug Administration) and potential risks.

14. All documents reflecting communications with pharmaceutical manufacturers, compounding pharmacies, or government agencies relating to the safety of puberty blockers or hormones used in the treatment of minor patients.

15. All documents relating to any adverse event, side effect, or medically unfavorable consequence or outcome in a minor patient with regard to gender-related care.

## IV. FORM OF PRODUCTION

Documents responsive to this Subpoena should be produced in the format specified in the "Production Specifications," attached as ATTACHMENT B to this Subpoena.

**SUBPOENA ATTACHMENT B**

Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")

### Collection of Electronically Stored Information (ESI)

Careful consideration should be given to the methodology, implementation and documentation of ESI collection to ensure that all responsive data and metadata are preserved in the collection process. Consideration should also be given as to whether production media should be encrypted when producing to the government when required by law (i.e. Health Insurance Portability and Accountability Act (HIPAA), Family Educational Rights and Privacy Act (FERPA), etc. *See* Section 24 below.

####     1.     Specification Modifications

Any modifications or deviations from the Production Specifications may be done only with the express permission of the government and these modifications or deviations should be communicated to the government and approved by the government in written form.  Any responsive data or documents that exist in locations or native forms not discussed in these Production Specifications remain responsive and, therefore, arrangements should be made with the government to facilitate their production.

####     2.     Production Format of ESI and Imaged Hard Copy Documents

Responsive ESI shall be produced in its unprocessed form (i.e., in its native format), without altering native electronic file formats and maintains the integrity of all source, custodian, application, embedded and metadata related thereto.  The native electronic file formats provided shall be of a type and nature which is functionally useable by all parties.  No alteration shall be made to file names or extensions for responsive native electronic files.  If a producing party is converting native files to image files for its own purposes, the Government requests a copy of that image file along with production of the native file.

For ESI, a producing party may provide an image file without a native file only if the affected document requires a privilege redaction or other permitted redaction.  Except as outlined below in sections 5 – 21, the redacted document shall be rendered to TIFF image format, and accompanied by an Opticon/Concordance® Image Cross Reference file. Paper documents shall also be imaged pursuant to the requirements below.

All applicable metadata/database (see section 3 below) shall be extracted and provided in Concordance® load file format.

> a. **Image File Format:** All imaged documents shall be produced in black and white TIFF format unless the image requires color.  An image requires color when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image.
>
> b. When producing black and white paper documents scanned to images, or rendered ESI, they shall be produced as 300 dpi, 1 bit, single-page TIFF files, CCITT

Group IV (2D Compression). When producing in *color,* paper documents scanned to images, or rendered ESI, they shall be produced as 300 dpi single-page JPG. Images should be uniquely and sequentially Bates numbered and unless otherwise specified, Bates numbers should be an endorsement on each image.

    i. All TIFF file names shall include the unique Bates number burned into the image. (See section 22, below, regarding Bates number instructions.)

    ii. All TIFF image files shall be stored with the ".tif" extension.

    iii. Images without corresponding extracted text shall be OCR'd using standard COTS products.

        1. An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

    iv. All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, shall be delivered on a single piece of media.

    v. No image folder shall contain more than 2,000 images.

c. **Opticon/Concordance® Image Cross Reference file:** Images should be accompanied by an Opticon load file that associates each Bates number with its corresponding single-page TIFF image file. The Cross Reference file should also contain the relative image file path for each Bates numbered page. The Opticon/Concordance® Image Cross Reference file is a page level load file, with each line representing one image.

Below is a sample:

```
REL000000001,,,\IMAGES\001\REL000000001.TIF,Y,,,
REL000000002,,,\IMAGES\001\REL000000002.TIF,,,,
REL000000003,,,\IMAGES\001\REL000000003.TIF,,,,
REL000000004,,,\IMAGES\001\REL000000004.TIF,Y,,,
REL000000005,,,\IMAGES\001\REL000000005.TIF,,,,
```

The fields are, from left to right:

- Field One – (REL000000001) – the Bates Number. This value must be unique for each row in the OPT file. The first page of each document must match the DOCID or BEGDOC# value of the respective document.
- Field Two – (blank) – the volume identifier. This field is not required.
- Field Three – (\IMAGES\001\REL000000001.TIF) – The relative file path to the image to be loaded.
- Field Four – (Y) – the document marker. A "Y" indicates the start of a unique document.
- Field Five – (blank) – The folder indicator. This field is not required, and typically is not used.

2

- Field Six – (blank) – The box indicator. This field is not required, and typically is not used.
- Field Seven – (blank) – The page count. This field is not required.

d. **Concordance® Load File**: Images should also be accompanied by a flat, document-level load file to provide the metadata and native files containing delimited text that will populate fields in a searchable, flat database environment. The file encoding must be one of four types: Western European (Windows), Unicode (UTF16), Big-Endian Unicode or UTF8. The file should contain the required fields listed below in section 3.

  1. Text delimited load files are defined using the standard Concordance delimiters. For example:

     | Field Separator | ¶ or Code 020 |
     | Text Qualifier | þ or Code 254 |
     | Newline | ® or Code 174 |
     | Multi-value | ; or Code 059 |
     | Nested values | \ or Code 092 |

  2. This load file should contain the relative file path to the individual multi-page, document level text files.
  3. This load file should also contain the relative file path to all provided native files, such as Microsoft Excel or PowerPoint files.
  4. There should be one line for every record in a collection.
  5. The load file must contain a header listing the metadata/database fields contained within. For example, if the data file consists of a First Page of a Record (BegDoc#), Last Page of a Record (ending Bates / ENDDOC#), DOCID, DOCDate, File Name, and a Title, then the structure may appear as follows:

     þBEGDOCþ¶þENDDOCþ¶þDOCIDþ¶þDOCDATEþ¶þFILENAMEþ¶þTITLEþ

d. **The extracted/OCR** text should be provided for each document as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the .txt extension.

e. **Directory and folder structure:** The directory structure for productions should be:

     \CaseName\LoadFiles
     \CaseName\Images < For supporting images (can include subfolders as needed, should not include more than 2,000 files per folder)
     \CaseName\Natives <Native Files location (can include subfolders as needed, should not include more than 2,000 files per folder)
     \CaseName\Text <Extracted Text files location (can include subfolders as needed, should not include more than 2,000 files per folder)

3

\CaseName\**Translated Images** < For supporting images of translated documents (as needed for rendered translated documents; can include subfolders as needed, should not include more than 2,000 files per folder)
\CaseName\**Translated Text** <Translated Text files location (as needed for translated text; can include subfolders as needed, should not include more than 2,000 files per folder).

### 3.    Required Metadata/Database Fields

A "√" denotes that the indicated field should be present in the load file produced. "Other ESI" includes data discussed in sections 5 – 21 below, but does not include email, email repositories (section 11), "stand alone" items (section 12), imaged hard copy material (section 9) and production from ESI collected from Smart Phones, Mobile Devices and Other Technology (section 13). Email, email repositories, and "stand alone" materials (section 12) should comply with "Email" column below. Imaged hard copy materials should comply with the "Hard Copy" column. Production from ESI collected from Smart Phones, Mobile Devices and Other Technology should comply with the requirements of section 13. The parties will meet and confer about any field which cannot be populated automatically (i.e. would require manual population of information).

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| COLLECTION SOURCE | Name of the Company/Organization data was collected from | Text | 160 | √ | √ | √ |
| SOURCE ID (BOX #) | Submission/volume/box number | Text | 10 | √ | √ | √ |
| CUSTODIAN | Custodian/Source - format: Last, First or ABC Dept. | Text | 160 | √ | √ | √ |
| DUPECUSTODIAN | Custodian/Source – all custodians who had the document before de-duplication; format: Last, First or ABC Dept. | Text – semicolon delimited | Unlimited | | √ | √ |
| DUPECUSTODIAN FILE PATH | Listing of all the file locations of the document before de-duplication | Text – semicolon delimited | Unlimited | | √ | √ |
| AUTHOR | Creator of the document | Text | 500 | | | √ |
| BEGDOC# | Start Bates (including prefix) - No spaces | Text | 60 | √ | √ | √ |
| ENDDOC# | End Bates (including prefix) - No spaces | Text | 60 | √ | √ | √ |
| DOCID | Unique document Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Text | 60 | √ | √ | √ |

4

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| PGCOUNT | Page Count | Number | 10 | ✓ | ✓ | ✓ |
| GROUPID | Contains the Group Identifier for the family, in order to group files with their attachments | Text | 60 | | ✓ | ✓ |
| PARENTID | Contains the Document Identifier of an attachment's parent | Text | 60 | | ✓ | ✓ |
| ATTACHIDS | Child document list; Child DOCID or Child Start Bates | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| ATTACHLIST | List of Attachment filenames | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BEGATTACH | Start Bates number of parent | Text | 60 | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment | Text | 60 | ✓ | ✓ | ✓ |
| RECORD TYPE | Use the following choices: Image, Loose E-mail, E-mail, E-Doc, Attachment, Hard Copy or Other.  If using Other, please specify what type after Other | Text | 60 | ✓ | ✓ | ✓ |
| FROM | Sender (i.e.: e-mail address, Last name, First name) | Text | 160 | | ✓ | ✓ |
| TO | Recipient (i.e.: e-mail address, Last name, First name) | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| CC | Carbon Copy Recipients (i.e.: e-mail address, Last name, First name) | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients (i.e.: e-mail address, Last name, First name) | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| SUBJECT | Subject line of email | Text | Unlimited | | ✓ | |
| TITLE | Document Title | Text | Unlimited | | | ✓ |
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Text | Unlimited | | ✓ | |

5

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| DOCDATE | Last Modified Date for files and Sent date for e-mail, this field inherits the date for attachments from their parent. Do not provide 00/00/0000. | Date | MM/DD/YYYY | | ✓ | ✓ |
| TEXT FILEPATH | Relative file path of the text file associated with either the extracted text or the OCR | Text | Unlimited | ✓ | ✓ | ✓ |
| DATE TIME SENT | Date and time Sent (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | |
| DATE TIME CRTD | Date Created (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME SVD | Date Saved (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME MOD | Date Last Modified (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME RCVD | Date Received (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | |

6

July 2011

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| DATE TIME ACCD | Date Accessed (USE TIME ZONE OF COLLECTION LOCALITY) Numbers must be populated. If date is unknown, leave blank. Do not provide 00/00/0000 | Date and Time | MM/DD/YY YY HH:MM:SS | | ✓ | ✓ |
| TIME ZONE OFFSET | Time zone of collection locality, relative to Coordinated Universal Time (UTC). E.g., for US Central Standard Time (CST), the value for this field should be -6.0 | Decimal | 10 | | ✓ | |
| FILE SIZE | Native File Size in KBs | Decimal | 10 | | | ✓ |
| FILE NAME | File name - name of file as it appeared in its original location | Text | Unlimited | | | ✓ |
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Text | 160 | | ✓ | ✓ |
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | Text | 10 | | ✓ | ✓ |
| FILEPATH | Data's original source full folder path | Text | Unlimited | | ✓ | ✓ |
| NATIVE LINK | Relative file path location to the native file | Text | Unlimited | | ✓ | ✓ |
| FOLDER ID | Complete E-mail folder path (e.g. Inbox\Active) or Hard Copy container information (e.g. folder or binder name) | Text | Unlimited | ✓ | ✓ | |
| HASH VALUE | Identifying value of an electronic record that is used for deduplication during processing. MD5 or SHA1 hash algorithms may be used, but must be kept consistent throughout all productions and communicated to Government. | Text | Unlimited | | ✓ | ✓ |
| MESSAGEHEADER | E-mail header. | Text | Unlimited | | ✓ | |
| ATTACHMCOUNT | Number of attachments (any level child document) associated with a ParentID | Text | 10 | | ✓ | |

7

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| FILE TYPE | Description that represents the file type to the Windows Operating System. E.g., Adobe Portable Document Format, Microsoft Word 97 – 2003, or Microsoft Office Word Open XML Format. | Text | 160 | | ✓ | ✓ |
| HAS HIDDEN CONTENT | Identifies whether the document has comments, track changes or other hidden content or data associated with it | Text | Yes/No | | ✓ | ✓ |
| MESSAGE TYPE | Exchange Message class or equivalent | Text | 60 | | ✓ | |
| EXTENDED PROPERTIES | | Text | Unlimited | | ✓ | ✓ |
| HAS REDACTIONS | Identifies whether a record has been produced with redactions; should be populated with Y for records with redactions and N for records without redactions. | Text | Yes/No | ✓ | ✓ | ✓ |
| HAS TRANSLATIONS | Identifies whether a document has been produced with translated text or audio contains a transcript | Text | Yes/No | ✓ | ✓ | ✓ |

4. **Search, De-Duplication, Near-Duplicate Identification, Technology Assisted Review, E-mail Conversation Threading and Other Culling Procedures**

   a. De-duplication of exact hash copies shall only be permitted if the producing party can meet all the provisions of this section. If a producing party cannot comply with any requirement of this section, it shall not conduct de-duplication of exact hash copies.

   b. De-duplication of exact hash copies shall be performed globally – across all custodians. The custodian of each record shall be populated in the DupeCustodian field.

   c. All files found on the National Institute of Standards and Technology (NIST) list, commonly referred to as deNISTing, should be excluded from delivery to the Government. All available metadata from files withheld from delivery due to the deNISTing process will be available upon request.

   d. All files should be globally de-duplicated with the following conditions:

8

    i. The "DupeCustodian" metadata field (listing of all custodians who had the document before de-duplication) must be provided with the document production.

    ii. The "DupeCustodian File Path" metadata field (listing all the file locations of the document before de-duplication) must be provided with the document production.

    iii. All files and metadata for the duplicate documents removed during de-duplication must be preserved and available for production upon request.

    iv. No customization of hashing may occur without prior express approval by the Government.

    v. De-duplication must be done by document family, not by individual document.

    vi. A detailed description of the steps taken to de-duplicate (including the process of obtaining hash values) must be provided to the Government. For every production after the first, a separate Unified Custodian overlay shall be provided. If no overlay is necessary due to the fact that no documents de-duped out in connection with previously produced documents, this shall be expressly stated in the cover letter accompanying the subsequent production(s).

e. The Producing Party shall not use any other procedure to cull, filter, group, separate or de-duplicate, or near-deduplicate, etc. (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of the government. All objective coding (e.g., near duplicate ID or e-mail thread ID) shall be discussed and produced to the government as additional metadata fields. The Producing Party will not employ analytic software or technology to search, identify, or review potentially responsive material, including but not limited to, technology assisted review or predictive coding, without first discussing with the government.

**5.  Hidden Text**

All hidden text (e.g. track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file. Except for Adobe PDF files, for any files that cannot be expanded, the native files shall be produced with the image file. If an Adobe PDF's hidden text cannot be expanded and rendered in an image file, it need only be produced in native form if individually requested by a specific document identifier or bates number.

**6.  Embedded Files and File Links**

All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

The parties shall meet and confer regarding how to treat file links, including links within e-mails to centralized document repositories (e.g. MS OneDrive and Google Drive).

9

### 7.    Image-Only Files

All image-only files (non-searchable .pdfs, multi-page TIFFs, Snipping Tool and other screenshots, etc., as well as all other images that contain text) shall be produced with OCR text and metadata/database fields identified in section 3 for "Other ESI."

### 8.    Encrypted Files

Any data (whether individual files or digital containers) that is protected by a password, encryption key, digital rights management, or other encryption scheme, shall be decrypted prior to processing for production.

   a. The unencrypted text shall be extracted and provided per section 2.d. The unencrypted files shall be used to render images and provided per sections 2.a and 2.b. The unencrypted native file shall be produced pursuant to sections 10-21.
   b. If such protected data is encountered but unable to be processed, each file or container shall be reported as an exception in the accompanying Exception Report (pursuant to section 27) and shall include all available metadata associated with the data, including custodian information.

### 9.    Production of Imaged Hard Copy Records

All imaged hard copy material shall reflect accurate document unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHID, BEGATTACH, ENDATTACH and FOLDERID).

   a. Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle. (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder).
   b. The first document in the collection represents the parent document and all other documents will represent the children.
   c. All imaged hard copy documents shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). All documents shall be produced in black and white TIFF format unless the image requires color. An image requires color when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image. Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.
   d. All objective coding (e.g., document date or document author) should be discussed and could be produced to the government as additional metadata/database fields should they be deemed as necessary.

### 10.    Production of Spreadsheets and Presentation Files

All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format), with an associated placeholder image and endorsed with a unique Bates number. *See* section 22 below.

10

The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata.

### 11. Production of E-mail Repositories

E-mail repositories, also known as e-mail databases (e.g., Outlook PST, Lotus NSF), can contain a variety of items, including: messages, calendars, contacts, tasks, etc. E-mail database systems should not be produced without consultation with and written consent of the government about the format for the production of such databases.

### 12. Production of Items Originally Generated in E-mail Repositories but Found and Collected Outside of E-mail Repositories, i.e., "Stand-alone" Items

Any parent e-mail or other parent items (e.g., calendar, contacts, tasks, notes, etc.) found and collected outside of e-mail repositories (e.g., items having extensions .msg, .htm, .mht, etc.), shall be produced with the "Loose E-mail" metadata fields outlined in section 3, including but not limited to any attachments, maintaining the family (parent/child) relationship.

### 13. Production of ESI Collected from Mobile Devices, Messaging Platforms, Workplace Collaboration Tools and Other Technologies

The responding party shall identify, collect, and produce any and all data which is responsive to the requests, collected from mobile devices, messaging platforms, workspace collaboration tools and other technologies. These technologies include, but are not limited to smart phones, cell phones, tablets, PDAs, Blackberry, smart phone data, tablet data, voicemail messaging data, instant messaging, chat messaging, text messaging, Slack, conference call data, video/audio conferencing, workspace collaboration tools (e.g., GoTo Meeting, WebEx, MS Teams, Zoom), and related/similar technologies. However, such data, logs, metadata or other files related thereto, as well as other less common but similar data types, shall be produced after consultation with and written consent of the government about the format for the production of such data.

The expectation of the government is that all familial relationships for all data will be maintained. Similar to email conversations and families, the expectation is that all messages/texts in a conversation will be provided the same conversation index and groupid data (maintaining the familial relationship) allowing the government to read the entire conversation in context. Messages should be produced to align with the formats listed in section 2 and as individual Unicode text files, and attachments should be produced as native files with images and OCR text.

While the parties shall meet and confer on precise metadata formats, as an example, metadata collected from mobile devices shall be provided in formats such as the following:

11

| Field Name | Field Description | Mobile | Mobile Cellebrite Categories | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Chats | MMS | SMS | Email | Instant Message | Voicemail | Recordings | Notes | Calendar |
| TXT-ROWNUMBER | Row number. | ✓ | # | # | # | # | # | # | # | # | # |
| TXT-CHATNUMBER | Chat number, identifies chat groups. | ✓ | Chat # | | | | | | | | |
| TXT-STARTTIME | Start date-time for conversation, calendar item. | ✓ | Start Time: Date | | | | | | | | Start Date: Date |
| TXT-ENDTIME | End date-time for calendar item. | ✓ | | | | | | | | | End Date: Date |
| TXT-LASTACTIVITYTIME | End date-time for conversation. | ✓ | Last Activity: Date | | | | | | | | |
| TXT-PARTICIPANTS | Who was involved in the conversation, meeting. | ✓ | Participants | | Party | | | | | | Attendees |
| TXT-MESSAGENUMBER | Individual identifier for message. | ✓ | Instant Message # | | | | | | | | |
| TXT-BODY | Body of the chat, message, item. | ✓ | Body | Body | Message | | | | | Body | |
| TXT-STATUS | Whether the text was Sent or Read on the device. | ✓ | Status | Status | Status | | | | | | Status |
| TXT-LOCATION | GPS Information. | ✓ | Location | | | | Location | | | | Location |
| TXT-TIMESTAMP | Timestamp of item. Equivalent to DateReceived for incoming items or to | ✓ | Timestamp: Date | Date | Date | Date | | Timestamp-Date | Timestamp-Date | | |

12

| Field Name | Field Description | Mobile | Mobile Cellebrite Categories | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Chats | MMS | SMS | Email | Instant Message | Voicemail | Recordings | Notes | Calendar |
| | DateSent for outgoing items. | | | | | | | | | | |
| TXT-READDATE | Date read | ✓ | Read: Date | | Read-Date | | Read-Date | | | | |
| TXT-DELETED | Indicates whether a message was deleted and recovered by Cellebrite. | ✓ | Deleted - Chat | Deleted | | Deleted | Deleted | Deleted | Deleted | Deleted | Deleted |
| TXT-STARREDMESSAGE | Notes whether the message was flagged. | ✓ | Starred message | | | | Starred message | | | | |
| TXT-THREAD-GROUP | Populate with the DOCID of the first text in the chat conversation to allow the entire chat conversation to be grouped as a family. (Sort each device by Chat Number and then by Row Number to assign TXT-THREAD-GROUP identifier). This is NOT the BEGATTACH field or | ✓ | Chat # | | | | | | | | |

13

| Field Name | Field Description | Mobile | Mobile Cellebrite Categories | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Chats | MMS | SMS | Email | Instant Message | Voicemail | Recordings | Notes | Calendar |
| | Relativity Group Identifier. | | | | | | | | | | |
| TXT-SMSC | Short Message Service Center (handles SMS text messages on behalf of phone service provider) | ✓ | | | SMSC | | | | | | |
| DIRECTION | Direction of communication; Outgoing or Incoming. | ✓ | | Direction | Direction | Direction | Direction | | | | |
| IMPORTANCE | | ✓ | | Priority | | Priority | | | | | Priority |
| ACCOUNT | Account identifier for device user: email address, phone number, account number. | ✓ | | Name | | Account | | Name | | | |
| DURATION | Duration time of call, voice message, audio, video in HH:MM:SS format, e.g. 00:00:32 | ✓ | | | | | | Duration | Duration | | |

14

### 14.    Production of Social Media

Prior to any production of responsive data from social media (e.g., Twitter, Facebook, LinkedIn, etc.), the producing party shall first discuss with the government the potential export formats before collecting the information, to ensure it is collected and produced in a way that preserves the original metadata, has a clear chain of custody, and provides as much information as possible regarding the source and history of each individual communication.

Social media platforms offer different functions, forms of content, and capability for downloading accounts. Because of these differences, prior to collection of social media data, the producing party must discuss with the government the available export and production methods and formats that the producing party is considering. Unless the government agrees to an alternative in writing, regardless of the social media platform, productions of social media content must meet the following general requirements: (1) separate (2) searchable (3) static images of (4) each responsive posting on the social media platform, (5) all related content (e.g., comments, likes, share or re-transmittal information, images, videos, linked documents and content), and (6) associated metadata (e.g., user name(s), date, and time of all posts, comments, likes, share or re-transmittals).

These general requirements are in addition to any more specific requirements in a particular request (e.g., geolocation data), and the producing party must ask the government about any perceived conflict between these requirements and another source of specifications or requirements. If available from the social media platform or through social media data processing software, files that facilitate interactive review of the data (i.e., html files) as well as load files in .csv format must be produced with the associated content.

### 15.    Production of Structured Data

Prior to any production of responsive data from a structured database (e.g., Oracle, SAP, SQL, MySQL, QuickBooks, proprietary timekeeping, accounting, sales rep call notes, CRMs, SharePoint, etc.), the producing party shall first identify the database type and version number, discuss providing the database dictionary (in whole or part) and any user manuals, or any other documentation describing the structure and/or content of the database and a list of all reports that can be generated from the database. Upon consultation with and written consent of the government, if a report is provided, the standard format of that report provided should be in comma separated values (.csv) format. The information contained in any such report must be thoroughly explained to the government before production.

### 16.    Production of Photographs with Native File or Digitized ESI

Photographs shall be produced as single-page JPEG files with a resolution equivalent to the original image as they were captured/created. All JPEG files shall have extracted metadata/database fields provided in a Concordance® load file format as outlined in section 3 for "Other ESI."

15

### 17. Production of Images from which Text Cannot be OCR Converted

An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

### 18. Production of Translated Text with Non-English Language ESI or Documents

To the extent translated text is available to the producing party through machine language translation, such translations shall be provided to the government with the production. The producing party shall provide the original extracted text as well as the translated extracted text in load ready format. The translated text and images of translated documents shall be provided as a separate folder volume to the main production. The parties shall meet and confer regarding any required translated text redactions.

### 19. Production of Audio File Transcripts

To the extent audio files are produced and transcripts are available to the producing party through machine transcription, such transcripts shall be provided to the government with the production. The producing party shall provide the audio file transcript as a text file in load ready format like any other text file named by the BEGDOC#. The parties shall meet and confer regarding any required audio file redactions.

### 20. Production of ESI from Non-PC or Non-Windows-based Systems

If responsive ESI is in non-PC or non-Windows-based Systems (e.g., Apple, IBM mainframes, and UNIX machines, Android device, etc.), the ESI shall be produced after discussion with and written consent of the government about the format for the production of such data.

### 21. Production of Native Files (When Applicable Pursuant to These Specifications)

Production of native files, as called for in these specifications, shall have extracted metadata/database fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 3 as well as a placeholder image which indicates a native file is being produced.

ESI shall be produced in a manner which is functionally usable by the government. The following are examples:

    a. AutoCAD data, e.g., DWG and DXF files, shall be processed/converted and produced as single-page JPG image files and accompanied by a Concordance® Image formatted load file as described above. The native files shall be placed in a separate folder on the production media and linked by a hyperlink within the text load file.

    b. GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.

16

    c.  Audio and video recordings shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

**22.   Bates Number Convention**

All images should be assigned Bates numbers before production to the government. Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page. The numbers should be endorsed on the actual images at a location that does not obliterate, conceal, or interfere with any information from the source document. Native files should be assigned a single Bates number for the entire file which will represent the native document in the Opticon/ Concordance® Image Cross Reference file. The load file will include a reference to the native file path and utilize the NATIVELINK metadata field). The Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion. The Bates number shall be a unique number given sequentially (i.e. page one of document is PREFIX0000000001, page two of the same document is PREFIX0000000002) to each page (when assigned to an image) or to each document (when assigned to a native file). If the parties agree to a rolling production, the numbering convention shall remain consistent throughout the entire production. There shall be no spaces between the prefix and numeric value. If suffixes are required, please use "dot notation." Below is a sample of dot notation:

|  | *Document #1* | *Document #2* |
|---|---|---|
| *Page #1* | PREFIX00000000001 | PREFIX00000000002 |
| *Page #2* | PREFIX00000000001.002 | PREFIX00000000002.002 |
| *Page #3* | PREFIX00000000001.003 | PREFIX00000000002.003 |

**23.   Media Formats for Storage and Delivery of Production Data**

Electronic documents and data shall be delivered on any of the following media:

    a.  CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications; Blu-ray.
    b.  External hard drives (USB 3.0 or higher, formatted to NTFS format specifications) or flash drives
    c.  Government approved File Transfer Protocol (FTP) technologies.
    d.  Storage media used to deliver ESI shall be appropriate to the size of the data in the production.
    e.  Media should be labeled with the case name, production date, Bates range, and producing party.

**24.   Virus Protection and Security for Delivery of Production Data**

Production data shall be free of computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the government. Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions. All encryption software shall be used with approval by and with the written consent of the government.

17

25. **Privilege Logs**

a.      The name and title of the author (and if different, the preparer and signatory);
b.      The name(s) and title(s) of the individual(s) to whom the document was addressed;
c.      The name(s) and title(s) of the individuals to whom the document or a copy of the document was sent or to whom the document or a copy, or any part thereof, was shown;
d.      The date of the document;
e.      The number of pages;
f.      A brief description of the subject matter;
g.      A statement of the specific basis on which privilege is claimed; and
h.      The paragraph or subparagraph of the Subpoena to which it is responsive.

26. **Compliance and Adherence to Generally Accepted Technical Standards**

Production shall be in conformance with standards and practices established by the National Institute of Standards and Technology ("NIST" at www.nist.gov), U.S. National Archives & Records Administration ("NARA" at www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org), American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization ("ISO" at www.iso.org), and/or other U.S. Government or professional organizations.

27. **Read Me Text File**

All deliverables shall include a "read me" text file at the root directory containing: total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths, and formats. The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

28. **Exception Report**

An exception report, in .csv format, shall be included, documenting any production anomalies during the collection, processing, and production phases. The report shall provide all available BEGDOC# or DOCID values and metadata listed in section 3, including but not limited to file names and file paths for all affected files.

29. **Transmittal Letter to Accompany Deliverables**

All deliverables should be accompanied by a transmittal letter including the production date, case name and number, producing party name, and Bates range produced. Technical instructions on how to decrypt media should be included in the transmittal letter but the password should be transmitted separately.

-XXX-

18