UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

In Re. 2025 Subpoena to Children's National Hospital

Case No.: JRR 25 MC 00709

MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO PROCEED UNDER PSEUDONYMS,
TO WAIVE REQUIREMENT UNDER LOCAL RULE 102.2(a) TO PROVIDE ADDRESSES, AND FOR PROTECTIVE ORDER

## INTRODUCTION

Movants are transgender former patients of Children's National Hospital ("Youth Movants") and their parents ("Parent Movants"). They bring this action to challenge the subpoena issued by the U.S. Department of Justice ("Requester") to Children's National Hospital seeking voluminous private and personal information about their healthcare. Counsel for Requester, the U.S. Department of Justice, does not oppose Movant's motion to proceed pseudonymously.

Movants seek to protect their privacy to avoid the risk of harassment and retaliation they would be likely to face if their identities were disclosed. There is tremendous social stigmatization associated with being transgender and with receiving treatment for gender dysphoria, especially as individuals standing up for their rights in the face of such stigma.

The Youth Movants are minors and young adults seeking to proceed under pseudonyms to protect their identities and sensitive medical information. The Parent Movants seek to proceed under pseudonyms to protect their children's identities and sensitive medical information, and to avoid retaliation. The identification of the Parent Movants by their legal names would erase the

protection of confidentiality to which the Youth Movants are entitled because the Youth Movants would be readily identifiable through the names of their parents. Proceeding under pseudonyms is also necessary to protect Movants from undue harassment, discrimination, and violence because of their transgender status and because the Parent Movants have sought medical advice and consented to gender transition healthcare for their transgender adolescent children.

To avoid invading Youth Movants' medical privacy and subjecting them to risks of serious harm, Movants respectfully request permission to litigate under pseudonyms for the duration of this case. To protect their privacy and safety and to avoid exposure to discrimination, harassment, and retaliation, Movants also request waiver of the requirement under Local Rule 102.2(a) that they provide their addresses and seek a protective order limiting disclosure of their identities to the court only, and not to Requester or the public.

Because this request is vital for protecting Movants from harm and will not impede the public's understanding of the case, Movants' request easily satisfies the Fourth Circuit's five-factor balancing test announced in *James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993), and should be granted.

## LEGAL STANDARD

The Fourth Circuit has held that trial courts have discretion to permit parties to proceed pseudonymously, acknowledging that pseudonymity is appropriate where "privacy or confidentiality concerns are . . . sufficiently critical." *James*, 6 F.3d at 238. Under *James*, the Fourth Circuit instructs district courts to balance several factors when determining whether to permit a party to proceed under pseudonyms. Those factors include:

> [1] [W]hether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of sensitive and highly personal nature;
>
> [2] whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties;
>
> [3] the ages of the persons whose privacy interests are sought to be protected;
>
> [4] whether the action is against a governmental or private party; and, relatedly,
>
> [5] the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id.* (numerals added).

The five *James* factors are "guidelines" and are not exhaustive. *See id.* (noting five factors were among the guidelines "that have relevance to this case"). "At bottom . . . the trial court must 'carefully review *all* the circumstances of the case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns.'" *Doe v. Alger*, 317 F.R.D. 37, 39–40 (W.D. Va. 2016) (quoting *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992)) (emphasis in original).

## ARGUMENT

Movants should be permitted to proceed under pseudonyms. Theirs is precisely the type of case that warrants an exception to the general rule favoring public disclosure.

**I.    Courts regularly allow transgender youth to proceed pseudonymously.**

Applying the *James* test, courts in this Circuit and across the nation have permitted transgender plaintiffs to proceed under pseudonyms because "transgender individuals often face verbal and physical harassment when forced to reveal their transgender status." *Hersom v. Crouch*, No. 2:21-CV-00450, 2022 WL 908503, at *2 (S.D. W. Va. Mar. 28, 2022) (applying *James* factors); *see also Doe v. City of Detroit*, No. 18-CV-11295, 2018 WL 3434345, at *2 (E.D. Mich. July 17, 2018) (collecting cases and noting "the increased threat of violence to

3

which transgender individuals are exposed"); *PFLAG, Inc. v. Trump*, 766 F. Supp. 3d 535, 549 n.14 (D. Md. 2025) (allowing plaintiffs to proceed under pseudonyms because their transgender status is the basis of "'undue harassment, discrimination, and violence'" (citation omitted)); *Voe v. Mansfield*, No. 1:23CV864, 2024 WL 5120258, at *2 (M.D.N.C. Dec. 16, 2024) (noting court permitted "two parents and their transgender minor child" to proceed under pseudonyms); *Doe v. McHenry,* Civ. No. 25-286 (JEB), 2025 WL 596650, at *4-5 (D.D.C. Jan. 31, 2025) (pseudonymity granted for incarcerated transgender people); *Jones v. Trump,* Civ. No. 25-401 (UNA), 2025 WL 485419, at *5 (D.D.C. Feb. 13, 2025) (same); *Doe v. Blue Cross & Blue Shield of R.I. (BCBSRI)*, 794 F. Supp. 72, 74 (D.R.I. 1992) (transgender "plaintiff's privacy interest is both precious and fragile, and this Court will not cavalierly permit its invasion."); *Doe v. United Services Life Ins. Co.*, 123 F.R.D. 437, 438 (S.D.N.Y. 1988) (allowing pseudonym in recognition of privacy concerns related to exposure of plaintiff's sexual orientation).

The five-factor balancing test set forth in *James* strongly favors permitting Plaintiffs to proceed under pseudonyms in this litigation.

### A. Disclosing Movants' identifying information would reveal highly sensitive and personal matters.

Under *James*, pseudonymity is favored where the matter is one "of sensitive and highly personal nature." *James*, 6 F.3d at 238. Courts have recognized that a "person's transgender status is a highly sensitive and personal matter" worthy of protection under the first *James* factor. *Hersom*, 2022 WL 908503, at *1 (permitting transgender college student to proceed under pseudonym). Additionally, courts have recognized that "information about [a] plaintiff's medical conditions" is "sensitive and highly personal." *Doe v. Chesapeake Med. Sols., LLC*, No. SAG-19-2670, 2020 WL 13612472, at *1 (D. Md. Feb. 26, 2020). "Courts have held that minors' privacy interests in medical and financial information sufficiently outweigh the common

law right of access" when considering motions to proceed pseudonymously. *J.K. v. Bedell*, No. 1:25-CV-00483-JRR, 2025 WL 694541, at *2 (D. Md. Mar. 3, 2025) (quoting *A.P.G. by Jones v. Fisher-Price, Inc.*, No. 3:22CV112 (DJN), 2023 WL 4406023, at *4 (E.D. Va. July 7, 2023)) (cleaned up); *see also Charles H. v. District of Columbia,* No. 1:21-cv-00997, 2021 WL 6619327, at *2 (D.D.C. Apr. 9, 2021) (disabilities and medical histories "are paradigmatically 'sensitive' and 'highly personal.'") (citing *J.W. v. District of Columbia,* 318 F.R.D. 196, 202 (D.D.C. 2016)); *Courtenay J. v. Cigna Health and Life Ins. Co.,* Civ. No. 25-80 (JEB), 2025 WL 435987, at *2 (D.D.C. Feb. 7, 2025) (same); *McCutchen v. Becerra,* No. 1:21-cv-01112, 2021 WL 1718806, at *3 (D.D.C. Apr. 23, 2021) (citation omitted) (granting pseudonyms to minor plaintiffs and their parents to protect "detailed information regarding their medical conditions and medical treatment").

Here, Youth Movants' transgender status, medical diagnoses of gender dysphoria, medical treatment, and medical and mental health histories are central to this case – this highly sensitive and private information is precisely the information Movants seek to prevent being revealed to Requester. Requiring Movants to identify themselves would reveal their transgender status and that the Youth Movants sought treatment for gender dysphoria, which is among the very information they seek to protect from disclosure. Disclosure of their identities would defeat much of the purpose of their request for protection by quashing the subpoena.

Movants' interest in retaining the privacy of their medical information is especially compelling here given the stigmatized nature of their diagnoses and treatment for gender dysphoria. "Gender dysphoria and transition remains [sic] highly stigmatized, lending greater weight to Plaintiffs' argument that there is a compelling interest to keep . . . information private." *Kadel v. Folwell,* 620 F. Supp. 3d 339, 390 (M.D.N.C. 2022) (quoting *Watson v. Lowcountry*

5

*Red Cross*, 974 F.2d 482, 487 (4th Cir. 1992)), *aff'd*, 100 F.4th 122 (4th Cir. 2024), *vacated on other grounds sub nom. Folwell v. Kadel*, 145 S. Ct. 2838 (2025); *see also id.* (granting motion to seal where information concerned "most intimate and sensitive nature concerning [plaintiffs'] struggle with, and treatment of, gender dysphoria, often during adolescence"); *Foster v. Andersen*, No. 18-2552-DDC-KGG, 2019 WL 329548, at *2 (D. Kan. Jan. 25, 2019) (collecting cases).

So here, Movants are entitled to proceed pseudonymously given that the subpoena at issue concerns intimate details about their lives, including their transgender status, their medical and mental health diagnoses, and past and current medical treatments.

### B. Disclosing Movants' identifying information would expose them to harm.

For related reasons, the second *James* factor also weighs heavily in favor of allowing Movants to proceed under pseudonyms. Identifying Movants publicly would subject them to immediate and serious risks of retaliatory physical and psychological harm. "[T]ransgender individuals often face verbal and physical harassment when forced to reveal their transgender status." *Hersom*, 2022 WL 908503, at *2. Hostility towards transgender people and transgender healthcare is well-documented. For example, a recent report found that transgender individuals are more than four times more likely to be victims of violent crimes than other individuals. Andrew Flores et al., *Gender Identity Disparities in Criminal Victimization: National Crime Victimization Survey, 2017–2018*, 111 AM. J. PUBLIC HEALTH 726, 727 (2021). Further, in 2022, over 70% of clinics that provided gender transition care to minors received threats specific to their provision of that care. Landon D. Hughes et al., *Adolescent Providers' Experiences of Harassment Related to Delivering Gender-Affirming Care*, 73 J. ADOLESC. HEALTH 672, 674 (2023).

Indeed, rampant animosity towards transgender Americans is evident from the actions of the Trump Administration. For example, on his first day in office, President Trump issued an executive order describing transgender identity as "false" and directed federal agencies to exclude transgender people from social services including shelters. *See* Exec. Order 14168, 90 Fed. Reg. 8615, 8615 (Jan. 30, 2025). A week later, President Trump issued another executive order denigrating transgender health care and declaring transgender healthcare to be "a stain on our Nation's history." Exec. Order 14187, 90 Fed. Reg. 8771, 8771 (Feb. 3, 2025). In an executive order banning transgender people from serving in the military, President Trump characterized being transgender as "conflict[ing] with a soldier's commitment to an honorable, truthful, and disciplined lifestyle." Exec. Order 14183, 90 Fed. Reg. 8757, 8757 (Feb. 3, 2025). *See also* Exec. Order 14190, 90 Fed. Reg. 8853 (Feb. 3, 2025); Exec. Order 14201, 90 Fed. Reg. 9279 (Feb. 11, 2025). These examples, among many others, demonstrate a concerted effort by this Administration to delegitimize and demean transgender people. If Movants' identities were disclosed to the Requester or to the public in connection with their transgender status and medical histories, they would face serious risks of harassment, discrimination, and retaliation that would threaten their physical and mental health, livelihoods, and wellbeing.

Disclosing Plaintiffs' identities to the federal government also means that their parents— some of whom are federal employees[1]—could face retaliation or harassment from their superiors and other colleagues who work for the government. *See, e.g.*, Pete Hegseth (@PeteHegseth), X (Sep. 4, 2025), https://x.com/PeteHegseth/status/1963781182715261326 ("Pronouns updated: She/Her/Fired"); *see also* Elisabeth Bumiller, *People Are Going Silent: Fearing Retribution, Trump Critics Muzzle Themselves*, N.Y. TIMES (Mar. 6, 2025),

---

[1] Declaration of Parent C.C. at ¶ 16.

https://www.nytimes.com/2025/03/06/us/politics/trump-democracy.html ("People say they are intimidated by online attacks from the president, concerned about harm to their businesses or worried about the safety of their families"). The second *James* factor, therefore, weighs heavily in favor of permitting pseudonymity to protect Movants' and their families' privacy, health, and safety.

In addition, given the politically and socially disfavored status of transgender people in American society, especially in the current challenging political climate, a lack of pseudonymity in this case would be likely to chill these and other transgender litigants from challenging violations of their privacy rights. The First Circuit has explained that "a deterrence concerns typically arises in cases involving 'intimate issues'" including medical concerns. *Doe v. Mass. Inst. of Tech.*, 46 F.4th 61, 71 (1st Cir. 2022) (quoting *In re Sealed Case*, 971 F.3d 324, 327 (D.C. Cir. 2020)). *See also Charles H.*, 2021 WL 6619327, at *2 ("The interest in anonymity is particularly great because of the risk that forcing disabled individuals to disclose deeply personal medical information could deter litigants from filing claims to vindicate their rights."). To prosecute their claims in cases such as this, transgender litigants are required to disclose numerous private details regarding their lives, as well as sensitive medical histories and treatments. If those litigants are forced to associate their names with such sensitive personal information, many potential litigants will be discouraged from vindicating their rights in cases like this. Indeed, several of the Movants in this case have declared that they would reconsider their participation if pseudonymity is not granted. *See* Decl. of Parent A.A. at ¶ 21; Decl. of Parent B.B. at ¶ 23; Decl. of Parent C.C. at ¶ 21; Decl. of Parent D.D. at ¶ 17; Decl. of Parent E.E. at ¶ 14; Decl. of Parent F.F. at ¶ 19; Decl. of Youth F.F. at ¶ 14; Decl. of Parent G.G. at ¶

17; Decl. of Parent H.H. at ¶ 19. Denial of permission to proceed under a pseudonym in this case would deter these and countless other transgender individuals from seeking redress via litigation.

### C. Pseudonymity would protect the privacy and safety of Youth Movants.

The third *James* factor of age strongly supports pseudonymity in this case. Movants are minor and young adult current and former patients and their parents. Courts in this and other districts have permitted minors, young adults, and their parents to proceed under pseudonyms. *See, e.g., PFLAG*, 766 F. Supp. 3d at 549 n.14; *McCutchen*, 2021 WL 1718806, at *3 (granting pseudonymity to both minor plaintiffs and their parents); *Charles H.*, 2021 WL 6619327, at *3 (granting pseudonymity to young adult plaintiffs based on their "relative youth in conjunction with their disabilities"); *Poe v. Drummond*, No. 23-CV-177-JFH-SH, 2023 WL 4560820, at *5 (N.D. Okla. July 17, 2023) (same); *Poe v. Labrador*, 709 F. Supp. 3d 1169, 1200 (D. Idaho 2023) (noting that plaintiffs, who were transgender adolescents and their parents, were proceeding under pseudonyms in challenge to ban on transgender healthcare), *stay granted in part on other grounds*, 144 S. Ct. 921 (2024), *appeal dismissed*, 2025 WL 1872749 (9th Cir. June 18, 2025); *Doe v. Ladapo*, 676 F. Supp. 3d 1205, 1215 (N.D. Fla. 2023) (same).

Allowing Parent Movants to proceed pseudonymously is also necessary because the disclosure of their names could easily be used to identify the Youth Movants, particularly in combination with the details provided in the subpoenaed records. *See PFLAG*, 766 F. Supp. 3d at 549 n.14 (granting motion to permit pseudonymity of young adult plaintiffs, minor plaintiffs, "and by extension, the Parent Plaintiffs" to protect plaintiffs "from undue harassment, discrimination, and violence because of the . . . Plaintiffs' transgender status"); *Doe v. Porter*, 370 F.3d 558, 561 (6th Cir. 2004) (upholding pseudonymity of minors and parents to protect "the special vulnerability of the[] child-plaintiffs") (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. Unit A Aug. 1981)).

Courts also regularly grant requests to proceed under pseudonyms for transgender adults. *See Hersom*, 2022 WL 908503, at *2 (permitting transgender college student to proceed under pseudonym); *J.C. v. McKnight*, No. DKC 23-2019, 2023 WL 5487216, at *2 (D. Md. Aug. 24, 2023) ("Courts have found that the third *James* factor weighs in favor of pseudonymity for eighteen- and nineteen-year-old plaintiffs because they are young adults who may still possess the immaturity of adolescence.") (quotations omitted); *BCBSRI*, 794 F. Supp. at 72–73 (granting motion in suit involving transgender-related healthcare coverage, listing other cases reaching the same result, and recognizing "the highly sensitive and personal nature of each person's sexuality" and the refusal to "strip plaintiff of the cloak of privacy which shields him"); *Doe v. Mass. Dep't of Corr.*, No. 1:17-cv-12255, 2018 WL 2994403, at *2 n.4 (D. Mass. Jun. 14, 2018) (noting court previously granted incarcerated transgender person's motion to proceed pseudonymously); *Doe v. Pa. Dep't of Corr.*, 585 F. Supp. 3d 797, 805-06, 808 (W.D. Pa. 2022) (granting incarcerated individual's motion due to reasonable fear of severe harm and invasions of privacy, and finding pseudonymity would not materially impair public's right); *Meriwether v. Trs. of Shawnee State Univ.*, No. 1:18-cv-753, 2019 WL 2392958, at *4 (S.D. Ohio Jan. 30, 2019) (granting motion because "the information Doe seeks to protect is 'of the utmost intimacy' and … there continues to be a serious social stigma associated with transgender identity with the potential for harmful repercussions"); *Doe v. Trump*, No. 1:17-cv-1597, Dkt. No. 3 (D.D.C. Aug. 10, 2017) (granting transgender military members' motion); *Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, No. 2:16-cv-524, 2016 WL 4269080, at *5 (S.D. Ohio Aug. 15, 2016) (granting motion and listing cases allowing "non-minor transgender plaintiffs to proceed anonymously due to the social stigma associated with their gender identity").

### D. Because this case is against government officials, pseudonymity does not undermine the public's interest in open proceedings.

Courts have generally concluded that the fourth *James* factor favors pseudonymity where the claims are against the government or government officials rather than private parties. *See, e.g., Doe v. Alger*, 317 F.R.D. at 41 ("When a plaintiff challenges the government or government activity, courts are more like[ly] to permit plaintiffs to proceed under a pseudonym than if an individual has been accused publicly of wrongdoing."); *Yacovelli v. Moeser*, No. 1:02CV596, 2004 WL 1144183, at *8 (M.D.N.C. May 20, 2004) (finding fourth factor weighed in favor of plaintiffs where they challenged constitutionality of a school policy); *E.W. v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003) ("[W]here a plaintiff attacks governmental activity, . . . the plaintiff's interest in proceeding anonymously is considered particularly strong" while "the government is viewed as having a less significant interest in protecting its reputation from damaging allegations than the ordinary individual defendant"); *Doe v. U.S. Dep't of State*, No. 1:15-cv-01971, 2015 WL 9647660, at *3 (D.D.C. Nov. 3, 2015) (same).

Here, Movants challenge a federal government Requester's subpoena. They do not sue individuals who face an asymmetric risk of reputational damage from pseudonymous litigation. Moreover, Requester does not oppose their request to proceed pseudonymously.

### E. Permitting Movants to proceed pseudonymously would not prejudice the Government.

The fifth factor weighs in Movants' favor because allowing the suit to proceed pseudonymously would not prejudice the government and the government does not oppose the request. *See James*, 6 F.3d at 238 (instructing courts to consider whether there is a "risk of unfairness to the opposing party from allowing an action against it to proceed anonymously"); *Free Speech v. Reno*, No. 98-cv-2680, 1999 WL 47310, at *2 (S.D.N.Y. Feb. 1, 1999) (stating that governmental entities are generally not prejudiced when plaintiffs proceed

pseudonymously). The government does not need to know the Movants' identities in order to defend its subpoena. Movants' right to prevent disclosure depends, not on the factual details of their treatment, but on the legal protections provided to private sensitive medical treatment information generally. Any interests Defendants have in proceeding publicly are undoubtedly outweighed by Plaintiffs' interests in protecting their health and safety.

    **F.    Denying pseudonymity would force Movants to experience the very injury against which they are litigating.**

The *James* factors are non-exhaustive. Many courts, in considering requests to proceed pseudonymously, consider whether the revelation of a plaintiff's identity in court would incur the very injury being litigated against. *See Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992); *Femedeer v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 190 (2nd Cir. 2008). In this case, the public revelation of Movants' identities to the government would result in precisely the harm the Movants are litigating to prevent. This factor, therefore, weighs heavily in favor of pseudonymity.

**II.    Local Rule 102.2(a)'s requirement to provide addresses should be waived.**

The Court should waive disclosure of Movants' addresses under Local Rule 102.2(a) for the same reasons it should allow Plaintiffs to proceed under pseudonyms. Requiring Movants to identify their addresses would severely undermine their pseudonymity because they could be identified—and located—based on their addresses.

**III.    A protective order for Movants' identities is warranted.**

Under Federal Rule of Civil Procedure 26(c), a court may issue a protective order to protect a party from harassment, retaliation, or any other form of discrimination and violence that might result from participating in the litigation. As in *PFLAG, Inc.*, 766 F. Supp. at 549, n.14,

such a protective order is necessary in order to protect transgender adolescents "from undue harassment, discrimination, and violence because of [their] transgender status."

A recent decision in the District of Columbia District Court supports Movants' request to prohibit disclosure to both the public and the Requester. In *League of Women Voters et al. v. U.S. Department of Homeland Security et al.*, No. CV 25-3501 (JEB), 2025 WL 2897654 (D.D.C. Oct. 10, 2025), the Court granted Plaintiffs' motion to prevent disclosure of their identities to the federal government defendant. The Court pointed to "the administration's actions against individuals for 'their involvement in litigation that is perceived as a legal or political threat to this Administration' [and found those actions] sufficiently analogous for the Court to credit Plaintiffs' retaliation fears." *Id.* at *2. *See also* CONSIDER THIS FROM NPR: *Trump Uses Government Powers to Target Perceived Enemies* (NPR, Apr. 29, 2025), https://www.npr.org/2025/04/29/1247777260/trump-uses-government-powers-to-target-perceived-enemies (describing retaliatory actions by federal officials against institutions and individuals).

Therefore, Movants seek a protective order to prevent disclosure of Movants' identities to Requester and to the public.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court grant their motion to proceed under pseudonyms, to waive the requirement of Local Rule 102.2(a) to provide their addresses, and to issue a protective order preventing disclosure of Movants' identifying information to Requester and the public.

Dated: November 17, 2025

*[signature]*

Eve L. Hill (Bar No. 19938)
BROWN GOLDSTEIN & LEVY, LLP
120 E. Baltimore St., Suite 2500
Baltimore, MD 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
ehill@browngold.com

Jennifer L. Levi (Pro Hac Vice to be submitted)
GLBTQ Legal Advocates & Defenders
18 Tremont Street, Suite 950
Boston, MA 02108
Tel: (617) 426-1350
jlevi@gladlaw.org

*Attorneys for Movants*