# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

In Re. 2025 Subpoena to Children's National Hospital

Case No.: _____

## DECLARATION OF PARENT A.A.

1. I am the parent of Child A.A., a minor who received medical care at Maryland and Washington D.C. locations of Children's National Hospital ("CNH") between 2023 and 2025. That care included general pediatric and adolescent care, specialty care, and transgender health care.

2. I live in Montgomery County, Maryland.

3. When we decided to seek care at CNH, I believed that my child's medical information would be treated as confidential and used only by health-care professionals involved in my child's treatment and would not be viewed by government officials or anyone else who are not part of their medical team.

4. We chose CNH because of its reputation for high-quality pediatric and adolescent medicine and because we believed the providers would handle sensitive issues with care and respect.

5. During my child's care at CNH, my child and I, along with others in my family, visited many times with CNH medical professionals in person, by telephone and by electronic communication.

6. Throughout those visits and communications, we disclosed private sensitive information about my child's mental and physical health, emotional state, school experiences,

friendships and family relationships. We believed this information was necessary for medical providers to understand my child's health care needs, make treatment recommendations, and monitor the results.

7. My child met separately with a licensed mental health professional at CNH for an in-depth assessment and follow-up sessions. My child spoke with that provider about matters that were extremely personal and that my child has not shared with people outside our immediate family and the medical team.

8. My child and I also met with CNH physicians to discuss different treatment options, to ask questions, and to talk through concerns. These were in-depth private conversations in which we relied on the providers' expertise and on the confidentiality of the setting. During these meetings, we shared private personal and medical information.

9. My child received medications recommended by their healthcare providers at CNH. These medications required regular follow-up visits, lab tests, and physical examinations.

10. At follow-up appointments, my child's doctors asked for updates about how my child was feeling—physically, mentally, and emotionally. They asked about school, friendships, and family life, and about how my child was handling day-to-day stresses. I believe that these discussions were documented in detailed notes in my child's medical record.

11. Neither my child nor I have made my child's diagnoses or treatment known to the federal government or anyone outside our family and health care providers. We have not been informed by the federal government that my child's care is the subject of any government investigation.

12. I believed that medical information gathered would be used only by CNH and other medical professionals to diagnose and treat my child. I did not expect, and did not agree, that my child's medical records could be turned over to government investigators or prosecutors who have no role in my child's treatment.

13. The idea that my child's medical records could be disclosed to the government is upsetting to me. Those records contain intimate information about my child's body, emotions, family situation, and private thoughts. I do not want anyone other than treating medical professionals, including government officials, reading and interpreting those details.

14. My child is transgender and already feels exposed and at risk in many public settings. If my child's records are turned over to government officials, my child would feel that their most personal information is being taken out of the confidential space of the doctor's office and placed in the hands of others who have no relationship with my child and no obligation of medical confidentiality. That would cause serious emotional distress for my child and me. My child previously was harassed and cursed at in a public restroom based on his appearance, leaving them hesitant to use sex-segregated facilities because of the persecution and stigma often faced by transgender individuals.

15. I am aware of the government's current public hostility toward transgender people and its efforts to eliminate rights and protections for transgender individuals, and this dangerous climate adds to my fear about the release of our identities.

16. Forcing my child's medical providers to release medical information will have a chilling effect on our willingness to seek medical care in the future and on the willingness of other transgender individuals to seek medical care. If my child does not feel able to be

fully honest with providers, it will undermine the quality of care my child receives and may lead them to delay or avoid seeking care in the future.

17. Once my child's records leave the health-care system and enter government files, I will have no control over how they are used, who will read them, how long they will be kept, how they are disseminated or released, legally or through a data breach, and whether they will be used to dox or otherwise harass us or others. I am deeply concerned that this loss of control will have serious long-term consequences for my child's privacy and sense of safety.

18. Simply redacting our names from documentation turned over to the government would not prevent our family from being identified. In our meetings with CNH medical professionals, we disclosed innumerable details to CNH medical providers that could identify our family and my child. This includes information about my child's relationships in school, parents' occupations, neighborhood, family and friends, and more.

19. Apart from other Movants, I have not disclosed, nor will I disclose, my involvement or my child's involvement in this litigation.

20. Given the current climate, public disclosure of my name, which would necessarily identify my child, or the disclosure of the name of my child, would also expose my child and our family to bullying, harassment, and discrimination.

21. If we are not permitted to proceed under pseudonyms, we may have to withdraw from this case to protect the safety of our child and our family.

22. For all the reasons above, I object to my child's medical records being shared outside of their medical treatment team.

23. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____

**Parent A.A.**

Dated: ___11/13/25___