UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| In Re. 2025 Subpoena to Children's National Hospital | Case No. 1:25-cv-03780 |

**MOVANTS' REPLY IN SUPPORT OF**
**MOTION TO QUASH SUBPOENA DUCES TECUM**

The Government's opposition asks this Court to enforce a subpoena that compels the disclosure of years of confidential medical records of children—records sought not to investigate a concrete federal offense, but to advance a preordained policy objective. At least five other courts across the country, confronting identical subpoenas, have recognized these fatal defects and quashed the respective subpoena. The Government's arguments in those cases, parroted here, have been repeatedly rejected, and its post-hoc rationalizations cannot supply the lawful purpose, relevance, or proportionality the Constitution requires. This Court should likewise act to prevent misuse of its process by quashing the subpoena's improper requests.

## ARGUMENT

**I.     Movants Have Standing to Move to Quash the Subpoena**

The Government's threshold argument—that patients categorically lack standing to challenge a subpoena for their own medical records—is inconsistent with Fourth Circuit precedent and has already been rejected by another U.S. district court. *See In re: 2025 UPMC Subpoena*, No. 2:25-mc-01069-CB, 2025 WL 3724705, at *1 (W.D. Pa. Dec. 24, 2025) (finding that "the hospital has standing, and so too do the patients" to challenge the subpoena). The Government's position would leave patients whose medical records are seized with no forum to vindicate their constitutional rights, relegating those rights to hospitals facing institutional pressures to comply, an outcome incompatible with settled doctrine.

To establish Article III standing, a plaintiff must show "(1) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury would likely be redressed by judicial relief." *Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 294 (4th Cir. 2024) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Here, Movants "would be injured in fact by . . . invasion of their privacy from disclosure" of their confidential medical records, "[t]he cause[] of this injury [is] the subpoena . . . . , and the injury is redressable by quashing the subpoena." *In re Grand Jury*, 111 F.3d 1066, 1071 (3d Cir. 1997).

Subpoena practice confirms that Movants satisfy Article III's standing requirements. "A third party has standing to . . . challenge the validity of a subpoena directed to another person or entity when the third party has a legally cognizable interest in the materials sought." *In re Grand Jury Subpoena #06-1*, 274 F. App'x. 306, 310 (4th Cir. 2008) (citing *Gravel v. United States*, 408 U.S. 606, 608–609 & n.1 (1972)). That principle applies equally to administrative subpoenas, including those issued under § 3486. *See, e.g.*, *Reisman v. Caplin*, 375 U.S. 440, 449 (1964) (target of an administrative subpoena may challenge it even if not the recipient); *U.S. v. Lazar*, No. 04-20017-DV, 2006 WL 3761803, at *6 ( W.D. Tenn. Dec. 20, 2006) (non-recipient "has standing to challenge whether the government exceeded the scope of § 3486"). And where, as here, subpoenas seek medical records, courts have no difficulty finding standing. Patients possess a personal right in the confidentiality of those records and therefore may move to quash subpoenas seeking them. *See Adkins v. CMH Homes, Inc.*, No. 3:13-cv-32123, 2014 WL 7005856, at *2 (S.D. W.Va. 2014).

The Government's reliance on *expressio unius est exclusio alterius* is unavailing. Section 3486(a)(5) specifies who may invoke the statute's procedural mechanism to quash a subpoena; it

does not address, let alone abrogate, Article III standing to challenge unconstitutional government action. *See Webster v. Doe*, 486 U.S. 592, 603 (1988) ("[W]here Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear.") (citing *Johnson v. Robison*, 415 U.S. 361, 373-74 (1974)). Nothing in § 3486 strips individuals of the ability to seek equitable relief when their own constitutional rights are threatened, and Congress cannot silently insulate administrative subpoenas from judicial review by limiting who may file statutory objections.

To the contrary, § 3486 expressly incorporates the standards applicable to judicial subpoenas. *See* 18 U.S.C. § 3486(a)(7). Those standards include Federal Rule of Civil Procedure 45,[1] which requires courts to quash or modify subpoenas that require disclosure of protected matter or impose undue burdens "on any 'person,' not just the recipient of the subpoena" and include burdens such as "invading privacy or confidentiality interests." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189-190 (4th Cir. 2019) (citing Fed. R. Civ. P. 45(d)(3)(A)(iv)). Therefore, "it is undisputed that an individual has an interest in the personal information contained in [their] medical records" sufficient to confer third-party standing under Rule 45 and, by extension, § 3486. *M.R. v. Tajdar*, Civ. No. TDC-17-3836, 2019 WL 3323207, at *2 (D. Md. July 24, 2019) (citing *Mezu v. Morgan State Univ.*, Civ. No. WMN-09-2855, 2011 WL 5110269, at *2 (D. Md. Oct. 25, 2011), *aff'd*, 495 F. App'x 286 (4th Cir. 2012)). Accordingly, Movants have both constitutional and statutory standing to challenge the subpoena.

---

[1] Rule 45 is also made applicable to § 3486 subpoenas through Rule 81(a)(5), which requires that the Federal Rules of Civil Procedure "apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute[.]" *See also In re Grand Jury Subpoena Duces Tecum Issued to First Nat'l Bank Dated November 4, 1976*, 436 F. Supp. 46, 48 (D. Md. 1977) ("Application of the Civil Rules to administrative subpoenas . . . reflects a significant policy judgment that the weight and import of administrative subpoenas is comparable to that of ordinary civil subpoenas[.]")

Finally, a subpoena "remains at all times under the control and supervision of a court." *In re Grand Jury Subpoena*, 829 F.2d 1291, 1297 (4th Cir. 1987) (quoting *United States v. Doe*, 457 F.2d 895, 898 (2d Cir. 1972)). Courts retain inherent authority to quash unlawful subpoenas *sua sponte*, regardless of a party's standing to object. *See, e.g.*, *Goldstein v. Hindle*, Civ. No. CJC-21-3124, 2025 WL 1928048, at *3 (D. Md. July 14, 2025); *United States v. Fitzgerald*, 416 F. App'x. 238, 244–45 (4th Cir. 2011).

## II. Congress Has Waived Sovereign Immunity with Respect to Movants' Motion

The Government argues that sovereign immunity bars suit, but Congress has expressly waived immunity for suits seeking equitable relief from unlawful agency action. Under the Administrative Procedure Act ("APA"), the United States waives sovereign immunity for any suit brought by a person "suffering legal wrong because of agency action" that seeks relief "other than money damages." 5 U.S.C. § 702; *City of New York v. U.S. Dep't of Defense*, 913 F.3d 423, 430 (4th Cir. 2019). "This waiver of sovereign immunity encompasses claims asserted under the APA as well claims arising under non-APA authority that seek equitable relief from agency action." *Amador v. Mnuchin*, 476 F.Supp.3d 125, 142 (D. Md. 2020) (citing *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 775 (7th Cir. 2011)). Here, Movants seek only declaratory and injunctive relief to prevent enforcement of a subpoena that compels disclosure of their medical records. They do not seek damages. Section 702 therefore applies by its plain terms.

The Government suggests otherwise by citing cases in which sovereign immunity barred suits for monetary damages,[2] or in which individuals received notice of a subpoena and a

---

[2] *F.D.I.C. v. Meyer*, 510 U.S. 471, 474, 486 (1994); *Bullock v. Napolitano*, 666 F.3d 281, 283 (4th Cir. 2012); *Osmon v. United States*, 66 F.4th 144, 146 (4th Cir. 2023); *Cunningham v. General Dynamics Info. Tech.*, 888 F.3d 640, 645 (4th Cir. 2018); *Lane v. Peña*, 518 U.S. 187, 189 (1996).

4

statutory opportunity to quash but failed to act within the time the statute required.[3] Those cases do not apply here. As the Government concedes, § 3486(a)(5)'s procedural mechanism to object is expressly limited to "the person or entity summoned;" therefore, "there is no other adequate remedy in a court" available to Movants. 5 U.S.C. § 704. The Fourth Circuit has made clear that "[i]n situations such as that here, in which there is no preclusion-of-review statute and no special statutory review procedure provided, the APA states the policy that a person suffering legal wrong because of agency action should have judicial review thereof by way of any applicable form of legal action, including an action for injunctive relief." *Hostetter v. United States*, 739 F.2d 983, 985–86 (4th Cir. 1984).

### III.     Movants Are Not Time-Barred from Challenging the Subpoena

The Government's timeliness argument fails because a party cannot be faulted for failing to challenge a subpoena it never received, never saw, and had no meaningful opportunity to contest. The cases the Government cites are inapposite: each involved individuals who received actual notice that their information was subject to a subpoena and was provided a statutory process and deadline to object.[4] Movants received no such notice. *See Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 380 (D. Md. 1999) ("When a party fails to receive prior notice of the information sought from a non-party, a party is deprived of its greatest safeguard . . . that is, the ability to object to the release of the information prior to disclosure.").

The Government's July 9 announcement that subpoenas had been issued nationwide—without identifying the subpoenaed entities—did not give any patient notice that their records

---

[3] *Ponsford v. United States*, 771 F.2d 1305, 1309 (9th Cir. 1985); *Dorsey v. United States*, 618 F. Supp. 471, 472 (D. Md. 1985).

[4] *See Ponsford*, 771 F.2d at 1309 (notice presumed); *Jones v. C.I.R*, No. CCCB-07-2024, 2007 WL 4302593, at *1 (D. Md. Aug. 23, 2007) (notice presumed); *Swann v. Secretary, HUD*, No. 05-492, 2006 WL 148738, at *1 (D.D.C. Jan. 19, 2006) (notice provided); *Turner v. United States*, 881 F. Supp. 449, 451 (D. Haw. 1995) (notice provided).

were sought, let alone a meaningful opportunity to challenge disclosure. *See In re: 2025 UPMC Subpoena*, 2025 WL 3724705, at *1 ("The timeliness argument is disingenuous, given the patients' initial lack of awareness of, and uncertainty regarding, the subpoena."). Movants did not sleep on their rights; they acted promptly once they learned that their confidential medical records were subject to a sweeping subpoena.

Even where timing rules apply, courts routinely excuse delay on untimely motions to quash where circumstances warranted equitable flexibility, including where subpoenas were facially overbroad or implicated confidential health information. *See, e.g.*, *In re Motorsports Merch. Antitrust Litig.*, 186 F.R.D. 344, 349 (W.D. Va. 1999) (holding that "the failure to act timely will not bar consideration of [certain] objections" including that "a subpoena that is overbroad on its face"); *Olszewski v. Bloomberg L.P.*, No. 96 Civ. 3393, 2000 WL 1843236, at *4 (S.D.N.Y. Dec. 13, 2000) (considering untimely motion to quash because movant was "entitled to protection from discovery of his confidential health . . . records"). Thus, nothing in § 3486, typical subpoena practice, or equity bars Movants' claims.

## IV. The Government Fails to Show the Subpoena Serves a Lawful or Necessary Investigative Purpose

The Government's contention that the subpoena satisfies the Fourth Amendment has been rejected by five federal district courts evaluating identical subpoenas issued as part of the same nationwide effort targeting providers of lawful healthcare to transgender children and young adults. *In re Subpoena Duces Tecum No. 25-1431-016*, No. 2:25-mc-00041, 2025 WL 3562151 (W.D. Wash. Sept. 3, 2025) (Seattle Children's Hospital); *In re: Admin. Subpoena No. 25-1431-019*, No. 1:25-mc-91324-MJJ, 2025 WL 2607784 (D. Mass. Sept. 9, 2025) (Boston Children's Hospital); *Queerdoc, PLLC v. U.S. Department of Justice*, No. 2:25-mc-00042-JNW, 2025 WL 3013568 (W.D. Wash. Oct. 27, 2025); *In re: Subpoena No. 25-1431-014*, No. 25-39,

6

2025 WL 3252648 (E.D. Pa. Nov. 21, 2025) (Children's Hospital of Philadelphia); *In re: 2025 UPMC Subpoena*, No. 2:25-mc-01069-CB, 2025 WL 3724705 (W.D. Pa. Dec. 24, 2025) (University of Pittsburg Medical Center). These courts rejected the same arguments the Government makes here.

> **A. The Subpoena Is Not Entitled to Deference Where the Record Shows an Improper and Untethered Purpose**

The Government contends that the subpoena serves a valid investigative purpose under the Food, Drug, and Cosmetic Act ("FDCA"), and that this Court must accept that purpose at face value. But administrative subpoenas are not self-validating, and the undisputed record demonstrates that this subpoena was issued to advance a predetermined policy objective—not to investigate a concrete violation of federal law.

The Administration has made its position explicit. The record demonstrates that the subpoena's purpose is not to investigate a federal healthcare offense, but to advance the Administration's stated objective to end the provision of gender-transition medical care to minors—"an unprecedented federal intrusion into the regulation of medical practice—an area long reserved to the states." *GenBioPro, Inc. v. Raynes*, 144 F.4th 258, 276 (4th Cir 2025). The subpoena was issued on the heels of Executive Orders and a public memorandum from the Attorney General pledging to "hold accountable" hospitals and doctors who provide this care.[5] Since then, the Administration has made its objective increasingly clear: the U.S. Department of Health and Human Services ("HHS") has proposed regulations to prohibit federal funding and defund hospitals providing established healthcare to transgender minors,[6] and the HHS Secretary

---

[5] U.S. Off. Of The Att'y Gen., *Memorandum for Select Component Heads: Preventing the Mutilation of American Children* (Apr. 22, 2025), https://www.justice.gov/ag/media/1402396/dl.

[6] Medicaid Program, Prohibition on Federal Medicaid and Children's Health Insurance Program Funding for Sex-Rejecting Procedures Furnished to Children, 90 Fed. Reg. 59441 (Dec. 19, 2025); Medicare and Medicaid Programs;

7

recently issued a declaration further attempting to redefine standards of care for purposes of federal program participation in order to exclude those same providers and institutions.[7] HHS announced the purpose of these actions in plain terms: "to carry out President Trump's Executive Order directing HHS to end the practice of sex-rejecting procedures on children."[8] That is the same Executive Order that directed the Department of Justice ("DOJ") to issue the subpoena at issue here.[9]

The Government's effort to recast this policy campaign as a neutral investigation is pretextual. And the Government's reliance on a "presumption of regularity," U.S.' Mem. of Law in Opp. to Motion to Quash Subpoena, ECF 15, at 16 (hereinafter "U.S. Brief"), does not foreclose judicial scrutiny of the subpoena. That presumption cannot serve as a substitute for the required showing that the subpoena serves "a legitimate purpose" and seeks information "relevant to that purpose." *United States v. Powell*, 379 U.S. 48, 57 (1964); *see also Mayor of Baltimore v. Trump*, 429 F. Supp. 3d 128, 137 (D. Md. 2019) (noting that while "judicial review of agency action is deferential . . . .Of course, that does not mean courts should 'rubber-stamp' agency action."). The Government's own repeated statements, declarations, and regulatory actions provide the clearest evidence that its objective is to end the very practice it claims to be merely investigating.

---

Hospital Condition of Participation: Prohibiting Sex-Rejecting Procedures for Children, 90 Fed. Reg. 59463 (Dec. 19, 2025).

[7] Decl. of the Sec. of the Dep't of Health and Human Servs. Re: Safety, Effectiveness, and Professional Standards of Care for Sex-Rejecting Procedures on Children and Adolescents (Dec. 18, 2025), https://www.hhs.gov/sites/default/files/declaration-pediatric-sex-rejecting-procedures.pdf.

[8] *HHS Acts to Bar Hospitals from Performing Sex-Rejecting Procedures on Children*, U.S. Dep't Health & Hum. Servs. (Dec. 18, 2025), https://www.hhs.gov/press-room/hhs-acts-bar-hospitals-performing-sex-rejecting-procedures-children.html.

[9] *Protecting Children From Chemical and Surgical Mutilation*, The White House (Jan. 28, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/protecting-children-from-chemical-and-surgical-mutilation/.

The Government claims that the subpoena is necessary to investigate the "distribution, promotion and sale of puberty blockers and cross-sex hormones in minors for the treatment of gender dysphoria" under the FDCA. U.S. Brief at 15. But the Government has not identified a single concrete instance of misbranding, adulteration, or unlawful promotion at Children's National Hospital ("CNH") – or anywhere else – that would justify sweeping access to years of pediatric medical records. The disconnect between the stated purpose and the records sought is fatal to the Government's position. If the Government were genuinely investigating FDCA violations by manufacturers or distributors, it would seek branding, sales, and promotional materials – not individual patient charts. Patient records cannot reveal whether a manufacturer engaged in misbranding or unlawful promotion; they show only what care a patient received. The only way these records become relevant to an FDCA investigation is if the Government has already concluded that all prescriptions for these medications are illegal – a conclusion that presupposes the answer to the question it claims to be investigating.

That approach turns the FDCA on its head. The Act "regulates *commerce*, not *care* . . . [O]ff-label prescribing – the use of an approved drug for an unapproved indication – is lawful and beyond the Act's reach. 'Although the Act regulates a manufacturer's distribution of drugs, it does not go further by regulating a doctor's practice of medicine.'" *In re Subpoena No. 25-1431-014*, 2025 WL 3252648, at *17 (quoting *Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*, 13 F.4th 531, 534 (6th Cir. 2021)) (internal citation omitted) (emphasis in original).

The Government must show a "realistic expectation rather than an idle hope" of finding a violation to support a subpoena. *In re Subpoena Duces Tecum No. 25-1431-016*, 2025 WL 3562151, at *6 (quoting *U.S. v. Harrington*, 338 F.2d 520, 524 (2d Cir. 1969)). Multiple courts,

reviewing identical subpoenas in this nationwide effort, held that the Government's justification is pretextual and fails this basic test. One court found DOJ's justification "threadbare" and concluded its true purpose was not to investigate a federal healthcare offense but to "end gender-related care for minors." *Id.* at *15 n.12. Another quashed a subpoena because it was issued to advance "generalized policy objections about medical treatment decision," not to investigate a cognizable federal offense. *In re Subpoena No. 25-1431-014*, 2025 WL3252648, at *17. Simply put, "Congress, through Section 3486, does not authorize a federal investigation into lawful medical practice simply because the President or current Attorney General disapproves of the care provided regardless of [a state]'s approval in the exercise of its police powers." *Id.*

> B. **The Government Has Not Shown That Identified Patient Records Are Necessary to Its Investigation**

The subpoena fails Fourth Amendment scrutiny for an independent reason: its scope is unreasonably broad and disproportionate to any legitimate investigation need. The Fourth Circuit has made clear that relevance in the administrative-subpoena context is not boundless. Where a subpoena does not reasonably relate to the inquiry the agency is authorized to conduct, it must be quashed. *In re Subpoena Duces Tecum*, 228 F.3d 341, 349 (4th Cir. 2000). The subpoena here fails that test.

The Government asserts that patient identities are necessary to match clinical charts to billing records, review consent practices, and identify fraudulent patterns. But that inverts investigative logic. The Government can analyze billing codes, payment records, communications with manufacturers, consent form templates, and prescribing patterns without knowing the identities of individual children. If those materials reveal systemic miscoding, fraudulent billing, or deficient consent practices, that evidence exists independent of whether a particular patient is named. The Government does not need to know that a specific minor

10

received particular medications to determine whether treatments were misbilled or whether off-label promotion occurred. Identifying individual patients serves no investigative purpose at this stage – it only magnifies the privacy intrusion.

V.   **The Government's Misreading of Fourth Circuit Precedent Would Eliminate Fifth Amendment Privacy Protections for Medical Records**

The Government asks this Court to hold that § 3486 provides a categorical exception to the Fifth Amendment's privacy protections for medical records. This request misreads the law – neither the Supreme Court nor the Fourth Circuit has ever held that patients forfeit their constitutional privacy rights simply by seeking medical care, or that administrative subpoenas for medical records are immune from constitutional scrutiny. To the contrary, controlling precedent requires a case-specific balancing of interests, weighing the Government's asserted need against the individual's privacy interest, and considering the nature of the information sought, the breadth of the request, and the adequacy of safeguards against misuse.

A.   **Patients Retain a Constitutionally Protected Privacy Interest in Their Medical Records**

The Government points to CNH's Notice of Privacy Practices, which states that protected health information may be disclosed for law enforcement purposes. But general notice that disclosure is legally possible does not eliminate patients' reasonable expectation that such disclosure will occur *only when legally proper*. At most, such notices establish a reduced expectation of privacy, not its elimination. *See In re Subpoena Duces Tecum*, 228 F.3d at 351 (recognizing only a "reduced," not eliminated, expectation of privacy in patient records and balancing that interest against the Government's showing of a compelling interest). Patients reasonably expect that government access to their medical records requires lawful statutory authority and compliance with constitutional limits. A notice that records may be disclosed for lawful investigations does not authorize disclosure for unlawful or untethered ones. *See*

11

*Ferguson v. City of Charleston*, 532 U.S. 67, 78 (2001) (distinguishing information sharing within the healthcare system from the more serious intrusion on privacy that results from "the unauthorized dissemination . . . to third parties"). The Government's position would mean that anyone who signs a hospital privacy form forfeits all constitutional protection, effectively nullifying constitutional safeguards in the healthcare context. No precedent supports that result. *See, e.g.*, *Carpenter v. United States*, 585 U.S. 296, 314 (2018) (rejecting the notion that limited third-party disclosure automatically extinguishes reasonable expectations of privacy).

"Following in the Supreme Court's footsteps, the Fourth Circuit has long recognized a right to privacy in personal information." *Senior Execs. Ass'n v. United States*, 891 F. Supp.2d 745, 750 (D. Md. 2012) (citing *Taylor v. Best*, 746 F.2d 220, 225 (4th Cir.1984)). And "[f]ederal courts have acknowledged the importance of protecting a patient's right to privacy in medical records." *United States v. Elliott*, 676 F. Supp. 2d 431, 439 (D. Md. 2009). Movants' "[m]edical information is inherently intimate and personal and 'is precisely the sort [of information] intended to be protected by penumbras of privacy.'" *In re Grand Jury Subpoena*, 197 F.Supp.2d 512, 514 n.7 (E.D. Va. 2002) (quoting *Doe v. Southeastern Pa. Transp. Auth.*, 72 F.3d 1133, 1138 (3d Cir. 1995). This Court should reject the Government's attempt to convert ordinary consent in the healthcare context into a comprehensive waiver of constitutional rights.

    **B.**    **The Government Fails to Carry Its Burden Under the Required Case-Specific Balancing Test**

The Government relies heavily on *In re Subpoena Duces Tecum*, 228 F.3d 341 (4th Cir. 2000), to suggest that § 3486 categorically satisfies the Fifth Amendment's privacy protections for medical records. It does not. The Eastern District of Pennsylvania expressly applied *Subpoena Duces Tecum*'s balancing framework to an identical subpoena and concluded that the precedent "reflects a case-specific balance of interests, not a determination Section 3486

12

inherently provides constitutionally sufficient privacy protection for all subpoenaed medical records 'as a matter of law.'" *In re Subpoena No. 25-1431-014*, 2025 WL 3252648, at *23. Other federal district courts evaluating identical subpoenas reached the same conclusion, quashing requests for identified patient records based on the same *In re Subpoena Duces Tecum* factors: the absence of a concrete, institution-specific showing of wrongdoing, the exceptional sensitivity of the records sought, and the availability of less intrusive means to pursue the Government's stated investigative interests.

Critical differences between this subpoena and the one at issue in *In re Subpoena Duces Tecum* compel a different result. There, the investigation targeted a specific physician suspected of concrete billing fraud based on particularized evidence. The Fourth Circuit emphasized that the Government had articulated a focused investigation into identifiable misconduct. *See* 228 F.3d at 350. Here, by contrast, the Government has identified no specific violation at CNH that would justify the disclosure of identifiable patient medical records. It advances generalized objections to an entire category of lawful medical care and seeks years of patient records in the absence of any institution-specific showing.

Second, while *In re Subpoena Duces Tecum* rested on the Government's "compelling interest in identifying illegal activity," *id.* at 351, that interest is not self-executing. District courts in this Circuit have recognized that the decision "does not mean that in all circumstances the government's interest in advancing an ongoing criminal investigation will always outweigh a patient's privacy interest in his medical records. There may be circumstances where a different result should obtain because a person's substantial privacy interest in certain medical records is not overcome by the government's interest in the contents of those records." *In re Grand Jury Subpoena*, 197 F. Supp. 2d 512, 515 (E.D. Va. 2002). This is such a case. The Government's

13

asserted interest is attenuated and speculative; the privacy interests at stake—identifiable, highly sensitive childhood medical records—are at the core of constitutional protection.

Third, the scope of the subpoena here is far broader than that in *In re Subpoena Duces Tecum*. The subpoena seeks years of identifiable medical records for all minor patients who received certain treatments, untethered to any particularized suspicion or defined instance of misconduct. The breadth of that demand magnifies the privacy intrusion and underscores the absence of the narrow tailoring that supported enforcement in *In re Subpoena Duces Tecum*.

Finally, *In re Subpoena Duces Tecum* requires a case-specific balancing analysis. The Fourth Circuit "expressly considered privacy interests and balanced them against the Department of Justice's asserted need for redacted records—an approach consistent with, not contrary to, *Westinghouse*." *In re Subpoena No. 25-1431-014*, 2025 WL 3252648, at *23. Applying that framework here—considering the nature of the records, the scope of the request, the strength of the Government's interest, and the availability of less intrusive means—leads to the opposite result. The subpoena cannot stand.

## VI. The Court Is Not Limited to Movant-Specific or Partial Relief

The Government's fallback proposal—limiting relief to the named Movants and modifying the subpoena to permit anonymized records—fails to cure the constitutional defects and disregards this Court's independent duty to prevent misuse of subpoena power. A subpoena duces tecum "remains at all times under the control and supervision of a court," and courts possess inherent authority to quash or modify subpoenas that are unlawful, unreasonable, or unconstitutional, whether or not every affected individual is formally before the Court. *In re Grand Jury Subpoena*, 829 F.2d 1291, 1297 (4th Cir. 1987) (quoting *United States v. Doe*, 457 F.2d 895, 898 (2d Cir. 1972)). That authority is especially critical here, where the subpoena targets confidential medical records of many children and families who may never learn their

14

information is at risk of disclosure. Limiting relief to named challengers would leave similarly situated patients exposed to unconstitutional intrusion based solely on happenstance and their ability to retain counsel. This Court is not required to tolerate a plainly unlawful subpoena merely because not every affected child is a party. *See In re: 2025 UPMC Subpoena*, 2025 WL 3724705, at *3 (granting motion to quash identical subpoena requests as to all patients).

The Court is not limited to modifying the subpoena where the defect is fundamental. Modification may be appropriate where a subpoena is overbroad but otherwise lawful; quashing is required when a subpoena exceeds statutory authority, lacks a proper purpose, or violates constitutional limits. *In re Subpoena Duces Tecum*, 228 F.3d at 349. Here, the Government has identified no narrowing construction that would cure the defects, because its demands for patient identities and complete medical files are themselves unauthorized and unreasonable.

Anonymization does not cure the constitutional harm. In *Northwestern Mem'l Hosp. v. Ashcroft*, the Seventh Circuit affirmed quashing a subpoena for redacted medical records because redaction could not eliminate realistic risks of reidentification and would not prevent harm, including the chilling effect on care-seeking. 362 F.3d 923, 929–31 (7th Cir. 2004). Those concerns apply with full force here. The Government's overt hostility toward transgender healthcare magnifies the risks of reidentification, chilling of care-seeking, and erosion of trust in the healthcare system. Anonymization is not adequate.

## CONCLUSION

Because the subpoena does not satisfy governing statutory and constitutional requirements, the Court should quash Requests 11, 12, and 13.

Dated: January 5, 2026               Respectfully submitted,

                                                */s/ Eve L. Hill*
Eve L. Hill (Bar No. 11938)
BROWN GOLDSTEIN & LEVY, LLP
120 E. Baltimore St., Suite 2500
Baltimore, MD 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
ehill@browngold.com

Jennifer L. Levi (*pro hac vice*)
Donovan C. Bendana (*pro hac vice* to be submitted)
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350
jlevi@gladlaw.org
dbendana@gladlaw.org

*Attorneys for Movants*