**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| In Re. 2025 Subpoena to Children's National Hospital | Case No. 1:25-cv-03780 |

## MOVANTS' RESPONSE TO THE GOVERNMENT'S MOTION FOR CLARIFICATION

Movants submit this response to the Government's Motion for Clarification in order to correct the factual record and address the parties' disagreement over the meaning of this Court's January 21, 2026 and February 3, 2026 Orders. The Court's February 3, 2026 paperless order states: "In the event the Government takes action to enforce the Subpoena, it shall provide counsel for Movants contemporaneous notice of same." ECF No. 31. That Order is clear. It required notice when DOJ undertook efforts to enforce the Subpoena by attempting to secure Children's National Hospital's ("CNH" or "the Hospital") compliance with the Subpoena—not just if or when the Department of Justice ("DOJ") chose to file a motion to compel patient medical records in federal court.

The Government's motion confirms that, in late March 2026, DOJ had a telephone call with counsel for CNH concerning the Hospital's compliance with the Subpoena, including "what to do" about patient records after this Court's January 21 ruling. ECF No. 32 at 1–2. The accompanying affidavit of Movants' counsel further explains that, during that discussion, DOJ asked CNH for its final position regarding the production of medical records, including protected health information, of pediatric patients who received gender-related healthcare services at CNH. Aff. of Eve L. Hill at ¶ 3. DOJ also asked CNH to develop a proposal for producing the medical records of pediatric patients not party to this case. *Id.* at ¶ 4. The Court's February 3 Order is clear and should be construed to require contemporaneous notice of these and similar DOJ efforts to enforce the Subpoena by securing CNH's compliance with the Subpoena's patient-record demands.

DOJ's contrary reading would defeat the purpose of both the February 3 and January 21 Orders of this Court. As Movants previously explained to the Court, CNH does not know which patients are the pseudonymous Movants and therefore cannot effectively screen out their records. ECF No. 25 at 1–2. On DOJ's reading, the Government could seek—and CNH could choose to comply and disclose—patient records pursuant to the Subpoena without ever needing to initiate formal *judicial* enforcement proceedings. That would create a substantial risk that the medical records of pediatric patients—and even Movants' records protected by this Court's January 21 Order—could be requested and disclosed in violation of the Court's rulings, all without Movants' knowledge or any opportunity to seek protection from this Court. *See* ECF No. 23 at 16 ("[T]he Subpoena is an overreach untethered to any lawful purpose no matter who seeks protection from the court[.]").

## BACKGROUND

In June and July of 2025, DOJ issued at least twenty substantively identical administrative subpoenas to major medical providers of pediatric transgender healthcare, including Children's National Hospital, as part of the Government's stated "nationwide investigation into . . . whether off-label promotion and/or unlawful dispensing of puberty blockers and cross-sex hormones for use by children suffering from gender dysphoria violated federal law," namely the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq. ("FDCA"). ECF No. 15 at 2. Requests 11, 12, and 13 of the Subpoena, as this Court summarized, demanded "production of adolescent patient records, including patient names, dates of birth, social security numbers, parent information, clinical indications, diagnoses, and parent authorization forms" of every minor patient prescribed puberty blockers or hormone therapy at CNH since 2020. ECF No. 23 at 14. Movants are eight families whose children received care through CNH's Gender Development Program and whose identities and medical records were at risk of disclosure by the issuance of the Subpoena.

On November 17, 2025, Movants filed their Motion to Quash Requests 11-13, arguing that the Subpoena sought the disclosure of highly sensitive pediatric medical records and identifying information, not to investigate a concrete federal offense, but to advance a preordained policy objective of ending access to gender-transition medical care for adolescents. *See* ECF No. 1. Movants argued that the Subpoena lacked a proper investigatory purpose, functioned as an impermissible fishing expedition, and violated their constitutional privacy interests in the confidentiality of their medical records. *Id.*

On January 21, 2026, this Court agreed and granted Movants' Motion to Quash, holding that "the Government's Subpoena lacks a proper investigatory purpose under law; serves only to bolster the Executive's policy objective of terminating access to gender affirming healthcare for adolescents; and has no plausible or coherent tether to its stated purpose." ECF No. 23 at 11; *see also id.* at 15 ("[T]he Subpoena is the classic impermissible fishing expedition.").[1] The Court ordered that the subpoena be quashed "as to Requests 11, 12, and 13, and as to any other Subpoena Request to the extent it seeks or requires production of Children's National Hospital patient medical records, patient identities, or identification of parents or guardians of patients." ECF No. 24 at 1. The Court further ordered that, "to the extent documents subject to this order have been produced by Children's National Hospital to the Government, the United States Department of Justice shall no longer have access to same unless obtained through lawful, proper means, and not the Subpoena." *Id.*

After entry of that Order, the parties submitted a joint report at the direction of the Court regarding prophylactic measures. ECF No. 25. The Government represented that "no documents

---

[1] DOJ's appeal of the Court's January 21 Order is currently pending before the Fourth Circuit. *In re: 2025 Subpoena to Children's Natl Hospital*, Case No. 26-1104 (4th Cir. Feb. 2, 2026).

subject to the order have been produced to the Government by Children's National Hospital." *Id.* at 1. With respect to future compliance, the Government proposed that Movants "identify themselves to Children's National Hospital through an appropriate, confidential mechanism so the hospital can withhold any such records from future production." *Id.* Movants explained why that proposal was not workable: "The Hospital is not a party to this litigation, and Movants have no authority to obtain or enforce any agreement from the Hospital. Thus, any response the Hospital might make to Requests 11, 12, or 13 presents a substantial and probable risk that records will be disclosed in violation of the Court's Order." *Id.* at 2. Movants stated that "the only workable prophylactic measure to effectuate the Court's Order would be for the Government to refrain completely from seeking responses to Requests 11, 12 and 13 from Children's National Hospital." *Id.*

On January 29, 2026, the Court ordered the Government to advise by written filing "1) whether it has initiated or pursued proceedings, motions practice, or the like to secure Subpoena compliance by the Hospital; and 2) if not, whether it intends or plans to do so." ECF No. 28 (footnote omitted). On February 3, 2026, the Government represented to the Court that it had not initiated or pursued proceedings, motions practice, or the like to secure subpoena compliance by CNH and that it had "no current plan or intention to do so." ECF No. 30. Later that same day, the Court entered a paperless order stating: "In the event the Government takes action to enforce the Subpoena, it shall provide counsel for Movants contemporaneous notice of same." ECF No. 31.

Movants have now learned from counsel for CNH that DOJ has recently engaged in efforts to enforce the Subpoena by seeking patient medical records from CNH, s*ee* Aff. of Eve Hill, Esq., without providing contemporaneous notice of those efforts to Movants' counsel and in contrast with their prior representation to this Court that DOJ had "no current plan or intention to do so." ECF No. 30. According to counsel for CNH, on March 30, 2026, CNH participated in a telephone

4

call with DOJ concerning CNH's response to the Subpoena. During that call, notwithstanding DOJ's February 3, 2026 representation to this Court that it had not pursued compliance efforts and had no current plan or intention to do so, DOJ asked CNH for its final position regarding the production of medical records—including protected health information—of pediatric patients who received gender-related healthcare services at CNH. *See id.* at ¶ 3.

Counsel for CNH further advised that, although DOJ acknowledged that the Hospital did not know the identities of the pseudonymous Movants protected by this Court's Order, DOJ nevertheless asked that CNH develop a proposal for producing the medical records of pediatric patients who received gender-related healthcare services at CNH but who were not a party to the Court's Order. *See id.* at ¶ 4. However, consistent with the Court's order permitting Movants to proceed under pseudonym, Movants' counsel has not provided CNH (a non-party to this case) with Movants' identifying information. *Id.* at ¶ 6. That is because disclosure of Movants' identities, even to CNH, would defeat the pseudonym protections this Court already found warranted and would expose Movants to the same risks of harassment, discrimination, and retaliation identified in the pseudonym filings and the Court's prior ruling. Even though CNH has not yet produced any such records, DOJ's efforts to obtain patient records from CNH creates a direct risk that records protected by this Court's January 21, 2026 Order could be disclosed. *Id.* at ¶ 7.

On April 28, 2026, Movants' counsel met and conferred with counsel for DOJ regarding Movants' request that DOJ refrain, during the pendency of the appeal, from seeking any patient records from CNH so as not to risk disclosure of Movants' records in violation of this Court's January 21 Order. The parties were unable to reach agreement. DOJ took the position that the Court's February 3 Order required only that DOJ serve Movants with any court filing DOJ makes to enforce the Subpoena, and not contemporaneous notice of other efforts to enforce the Subpoena

including seeking to obtain CNH's compliance regarding the production of patient medical records. *Id.* at ¶ 8. Later that same day, DOJ filed its Motion for Clarification. ECF No. 32.

## ARGUMENT

### I.    The Court's Orders require notice of all Government efforts to secure CNH's compliance with the Subpoena.

The Government's motion asks the Court to adopt a narrow interpretation of the February 3 paperless Order requiring notice to Movants only if DOJ files a formal motion to compel or similar judicial enforcement action. But that is not what the Court ordered. The Court said: "In the event the Government takes action to enforce the Subpoena, it shall provide counsel for Movants contemporaneous notice of same." ECF No. 31.

The Court's Order is clear on its face. The context for its issuance makes even more manifest its meaning. Just days earlier, the Court had directed DOJ to disclose whether it had "initiated or pursued proceedings, motions practice, or the like to *secure Subpoena compliance by the Hospital*." ECF No. 28 (emphasis added). The Court's phrasing unqualifiedly encompassed steps undertaken "to secure Subpoena compliance" from the Hospital. *Id.* And for good reason: if the February 3 Order required notice only of a later-filed motion to compel, it would do little to protect against the very risk the Court had already recognized, because CNH could produce records in response to DOJ's demands before any motion was ever filed and before Movants had any chance to seek relief. The February 3 paperless order followed DOJ's representation that it had not pursued such compliance efforts and had "no current plan or intention to do so." ECF No. 30. Read together, the January 29 and February 3 Orders show that the Court was concerned, not merely with a future motion to compel, but with efforts to secure CNH's compliance more generally that could result in the disclosure of patient medical records.

6

DOJ's textual and statutory arguments do not compel a different reading. DOJ relies on *EEOC v. Maritime Autowash, Inc.*, 820 F.3d 662 (4th Cir. 2016), for the proposition that "enforcement" is limited to formal judicial proceedings to compel compliance. ECF No. 32 at 2–3. But *Maritime Autowash* addressed when a federal court has jurisdiction to entertain an EEOC subpoena dispute—not what universe of agency conduct constitutes "taking action to enforce" a subpoena. The court there used the phrase "enforcement stage" descriptively to identify the procedural posture of judicial review; it did not hold, and had no occasion to hold, that pre-litigation pressure on a subpoena recipient is something other than enforcement activity. DOJ's reliance on 18 U.S.C. § 3486(c) fares no better. Section 3486(c) is titled "Enforcement" and prescribes the procedure by which the Government may seek judicial assistance when a recipient *refuses* to comply. It does not purport to define the universe of conduct that constitutes "taking action to enforce" a subpoena, and it certainly does not foreclose the Court's use of broader supervisory language in this case. In any event, the Court's February 3 Order is not a recitation of § 3486(c); it is a protective order issued in this Court's discretion, the meaning of which is informed by the Court's contemporaneous January 29 Order asking whether DOJ had "initiated or pursued proceedings, motions practice, or the like to secure Subpoena compliance by the Hospital," ECF No. 28, and by the protective purpose the Court has consistently articulated.

## II.    DOJ's own motion confirms conduct that falls within the February 3 notice requirement and implicates the January 21 Order.

DOJ's motion confirms the very conduct that required notice here. DOJ now admits that it had a late-March phone call with CNH about CNH's "compliance with the subpoena," including "what to do" about patient records after this Court's ruling. ECF No. 32 at 1–2. That is not a ministerial or incidental conversation. It is an effort to enforce the Subpoena.

DOJ attempts to characterize this as merely a discussion about "voluntary compliance," *id.* at 2, as though that takes the conduct outside the phrase "takes action to enforce the Subpoena." ECF No. 31. But a subpoena is a compulsory instrument backed by legal authority. A recipient's "voluntary compliance" is not voluntary in any ordinary sense; it is compliance under the threat of judicial compulsion that 18 U.S.C. § 3486(c) itself supplies. That is precisely why subpoena recipients negotiate the scope and timing of their productions with the issuing agency—and why DOJ's call to CNH was not a casual inquiry but a request, made under the Subpoena's authority, that CNH state its "final position" on producing patient medical records. Hill Aff. ¶ 3.

Treating that conduct as something other than enforcement activity ignores the coercive backdrop against which it occurs. *See United States v. Bailey (In re Subpoena Duces Tecum)*, 228 F.3d 341, 347 (4th Cir. 2000) ("[A] subpoena duces tecum leads to 'the *compulsory* production of private papers . . .'") (quoting *Hale v. Henkel*, 201 U.S. 43, 76 (1906)) (emphasis in original). When the subpoenaing party contacts the recipient to revisit compliance, requests the recipient's position on production, and presses on how patient records should be disclosed pursuant to the Subpoena, it is acting under the Subpoena's authority to secure compliance. It is enforcing the Subpoena. The fact that DOJ had not yet filed a motion to compel does not mean it was not taking action to enforce the Subpoena. And if Movants have to wait for notice until any motion to compel is filed in federal court, they risk losing the very protections they sought and secured by the issuance of this Court's Orders.

Indeed, the contemporaneous-notice requirement would have little practical value if DOJ's "court-filing-only" interpretation were adopted. Under DOJ's view, it could pursue compliance, discuss production, request proposals, and secure production of patient medical records — all without notice to Movants — so long as DOJ stopped short of filing, or possibly never needing to

file, a motion in federal court. But the Court's order requiring contemporaneous notice only makes sense if it was designed to allow Movants to return to Court before disclosure occurred, not after.

The pending appeal underscores why the Court's notice requirement must be read to reach pre-litigation compliance efforts. DOJ has appealed the Court's January 21 Order to the Fourth Circuit. *In re: 2025 Subpoena to Children's Nat'l Hosp.*, No. 26-1104 (4th Cir. Feb. 2, 2026). If, while that appeal is pending, DOJ may pursue CNH's "voluntary" production of records covered by the January 21 Order—or sweep up Movants' records as collateral to a production demand directed at other patients—the appellate process will be effectively mooted before it can run its course. The notice requirement is not a procedural courtesy; it preserves the status quo and Movants' ability to seek protection from this Court (and, if necessary, the Fourth Circuit) before disclosure occurs. That purpose is fully consistent with, and indeed compelled by, the protective posture this Court has maintained throughout this matter. It is also consistent with the representation on which the February 3 Order was entered: DOJ told the Court that it had not pursued compliance efforts and had "no current plan or intention to do so." ECF No. 30. The paperless Order followed within hours. Read in that light, "in the event the Government takes action to enforce the Subpoena" is most naturally understood as a backstop directed at precisely the kind of compliance pressure DOJ had just disclaimed—and then, less than two months later, undertook.

## III. DOJ's interpretation would defeat the Court's Orders and would place Movants at risk.

DOJ's motion also understates the significance of the March 30 call by ignoring the practical problem the parties already brought to the Court's attention: CNH does not know which patients are the pseudonymous Movants and therefore cannot effectively separate their records from other patient records on its own accord. ECF No. 25 at 1–2. Nor can that problem be solved by requiring Movants to identify themselves to the non-party Hospital, because doing so would itself

compromise the pseudonym protection this Court expressly granted and would expose Movants to the same risks of disclosure, harassment, discrimination, and retaliation that warranted pseudonymous treatment in the first place. See ECF No. 23 at 1 n.1 ("This case undoubtedly concerns information of an incredibly sensitive and personal nature—information regarding individuals' transgender status and related medical treatment . . . Such information, if revealed, would undoubtedly risk exposure of these minors and their families to harm, including harassment and discrimination.") (citations omitted). That is precisely why Movants previously told DOJ and this Court that any future response by CNH to Requests 11, 12, or 13 posed a "substantial and probable risk" that records would be disclosed in violation of the Court's Order. ECF No. 25 at 2.

That concern is now concrete. DOJ asked CNH for its final position on producing medical records, including protected health information, of pediatric patients who received gender-related healthcare services at CNH, and asked CNH to devise a proposal for producing records of other such patients even while acknowledging that CNH has no mechanism for producing identifying documents in a manner that does not risk producing records of Movants. Hill Aff. ¶¶ 3–4.

That interpretation would leave CNH patients at obvious risk. DOJ could quietly pursue production of sensitive pediatric medical records from CNH under the Subpoena's authority without adversarial testing and without a court's immediate supervision. But it would also place Movants themselves at risk. Because CNH cannot identify the pseudonymous Movants on its own, a production demand directed at "everyone else" may still sweep in Movants' records. In other words, DOJ's reading would allow the Government to pursue compliance in a way that threatens the very Movants whose rights this Court already protected, and before anyone receives notice or an opportunity to object.

That is why the Government's interpretation should not be adopted. It would strip the February 3 notice protection of real effect and would undermine the January 21 ruling by allowing DOJ to seek, outside Movants' view or knowledge, the very categories of records that this Court found DOJ could not lawfully obtain through the Subpoena.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court deny the Government's Motion for Clarification, as the February 3, 2026 Order is clear and required contemporaneous notice of DOJ's March 30, 2026 efforts to enforce the Subpoena by seeking to obtain Children's National Hospital's compliance with the Subpoena's patient-record demands.


Dated: May 1, 2026                     _____*/s/ Eve L. Hill*_____
                                       Eve L. Hill (Bar No. 11938)
                                       BROWN GOLDSTEIN & LEVY, LLP
                                       120 E. Baltimore St., Suite 2500
                                       Baltimore, MD 21202
                                       Tel: (410) 962-1030
                                       Fax: (410) 385-0869
                                       ehill@browngold.com

                                       Jennifer L. Levi (*pro hac vice*)
                                       Donovan C. Bendana (*pro hac vice*)
                                       GLBTQ LEGAL ADVOCATES & DEFENDERS
                                       18 Tremont Street, Suite 950
                                       Boston, MA 02108
                                       (617) 426-1350
                                       jlevi@gladlaw.org
                                       dbendana@gladlaw.org

                                       *Attorneys for Movants*